**In re KICK–OFF, INC., Debtor.**

**Bankruptcy No. 86–40641–JFQ.**

United States Bankruptcy Court,
D. Massachusetts.

June 17, 1987.

Joseph B. Collins, Hendel, Collins & Newton, Springfield, Mass., for debtor.

Donald R. Lassman, Legal Bureau, Cambridge, Mass., for Ira A. Jackson, Com'r Mass. Dept. of Revenue.

OPINION

JAMES F. QUEENAN, Jr.,
Bankruptcy Judge.

This case presents the question of whether a state tax commissioner has a valid property interest in a liquor license by force of a statute which gives him the right to block the renewal or transfer of the license unless taxes are paid.

Kick–Off, Inc. (the "Debtor") operated a restaurant and lounge in Amherst, Massachusetts. Prior to the commencement of these bankruptcy proceedings, it signed an agreement for the sale of all of its assets to Toucan, Inc. for $98,000, of which $13,000 was allocated to the Debtor's all alcoholic beverage license and goodwill. The Debtor's application for transfer of the license was approved by the Town of Amherst. The Buyer filed an application for issuance of the license in its name with the Alcoholic Beverage Control Commission of the Commonwealth of Massachusetts (the "ABCC"). Prior to the ABCC acting thereon, the Commissioner of the Massachusetts Department of Revenue (the "Commissioner") requested the ABCC to withhold approval of transfer of the license pending notification from the Commissioner that the Debtor had paid all accrued taxes. The ABCC notified the Debtor of the Commissioner's request and advised the Debtor it intended to honor the Commissioner's re-

quest. An involuntary Chapter 11 filing was then made against the Debtor.

The Debtor thereafter requested Court approval of the sale, to which the Commissioner objected, claiming a property interest in the liquor license in payment of arrearages in corporate excise taxes, meals taxes and withholding taxes. The Court authorized the sale free and clear of all liens and incumbrances and of any right of the Commissioner to cause the ABCC to withhold its approval for the issuance of a license in the name of the buyer. A bank holding a first security interest was paid in full, and the remaining $13,000 of proceeds, all allocable to the sale of the liquor license and goodwill, was ordered to be held in escrow by the Debtor's attorney pending resolution of the rights of the Commissioner and others therein. As the result of the Court's order, the Commissioner notified the ABCC that it withdrew its protest of the transfer, and the ABCC thereafter approved the transfer of the license. The case has subsequently been converted from Chapter 11 to Chapter 7.

■ The Commissioner relies primarily upon MASS.GEN.L. ch. 62C, § 49A[1] which gives him the right to have the ABCC withhold reissuance, renewal or extension of a liquor license pending notification from the Commissioner that the applicant is in good standing as to taxes. The sole

---

1. § 49A. *Applicants for License or Renewal Thereof; Contractors Providing Goods, Services or Real Estate Space to Commonwealth or Subdivision Thereof; Certification of Compliance with Tax Laws of Commonwealth; Enforcement Measures.*

(a) Any person applying to any department, board, commission, division, authority, district or other agency of the commonwealth or any subdivision of the commonwealth, including a city, town or district, for a right or license to conduct a profession, trade or business, or for the renewal of such right or license, shall certify upon such application, under penalties of perjury, that he has complied with all laws of the commonwealth relating to taxes. Such right or license shall not be issued or renewed unless such certification is made.

(b) No contract or other agreement for the purposes of providing goods, services or real estate space to any of the foregoing agencies shall be entered into, renewed or extended with any person unless such person certifies in writ-

ing, under penalties of perjury, that he had complied with all laws of the commonwealth relating to taxes.

(c) Any such agency, which has been notified by the commissioner pursuant to section forty-seven A that a person who holds a license or certificate of authority issued by such agency or who has agreed to furnish goods, services or real estate space to such agency has neglected or refused to file any returns or to pay any tax required under this chapter and that such person has not filed in good faith a pending application for abatement of such tax or pending petition before the appellate tax board contesting such tax, shall refuse to reissue, renew or extend such license, certificate of authority, contract or agreement until the agency receives a certificate issued by the commissioner that the person is in good standing with respect to any and all returns due and taxes payable to the commissioner as of the date of issuance of said certificate, including all returns and taxes referenced in the initial notification.

purpose and effect of § 49A is to give the Commissioner significant leverage in the collection of taxes. This is perfectly proper outside of bankruptcy. When bankruptcy ensues, however, payment of debts comes within the sweep of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Section 507 thereof sets forth the order of priority for the payment of debts. Taxes which accrued prior to the bankruptcy filing are given a seventh, not first, priority. If the tax debt is secured by a lien, § 506 recognizes that the lien is a secured claim to the extent of the value of the collateral. The Massachusetts statute ignores all of this. It is invalid under the Supremacy Clause by reason of its inconsistency with the Bankruptcy Code. *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *In re Hoffman,* 65 B.R. 985 (D.R.I.1986); *Aegean Fare, Inc. v. Licensing Board for City of Boston (In re Aegean Fare, Inc.),* 35 B.R. 923 (Bankr.D.Mass.1983).

The Commissioner relies on several decisions of the Ninth Circuit which have upheld similar statutes in a bankruptcy setting. *See State of California v. Farmers Markets, Inc., et al. (In re Farmers Markets, Inc.),* 792 F.2d 1400 (9th Cir.1986); *Artus v. Alaska Department of Labor, Employment Security Division (In re Anchorage International Inn, Inc.),* 718 F.2d 1446 (9th Cir.1983); *Sulmeyer v. State of California Department of Employment Development (Matter of Professional Bar Co., Inc.),* 537 F.2d 339 (9th Cir.1976); *United States of America v. State of California,* 281 F.2d 726 (9th Cir.1960). These decisions seem to be based upon the theory that such debt collection statutes do not frustrate the bankruptcy process because the license whose reissuance is contingent upon the required payment is burdened with this contingency prior to the bankruptcy, so that it is only its reduced value which becomes part of the bankruptcy estate. Such reasoning is an interesting exercise in metaphysics that has a superficial appeal because the claimant and the issuer are both agencies of the state. In view of this identity, a bankruptcy judge, recognizing the apparent conflict with *Perez v. Campbell, supra,* has suggested that perhaps the

Ninth Circuit decisions can be supported through an analogy to the doctrine of setoff. *See Artus v. Alaska Department of Labor, Employment Security Division, (In re Anchorage International Inn, Inc.),* 16 B.R. 308, 313 (Bankr.D.Ala.1981).

We are not persuaded. There is no doctrine of which we are aware that permits "setoff" of a debt against a property value. Nor is the Commissioner aided by the theory that the state, as the issuer of the license, was free to issue restricted or conditional rights thereunder. The state is certainly free to do so, but if the effect thereof is to conflict with the Bankruptcy Code, the state statute must fail. The Ninth Circuit has sought to avoid the *Perez* decision by attempting to distinguish it on the ground that there the Arizona statute requiring payment of a pre-bankruptcy motor vehicle judgment directly conflicted with the discharge provisions of the federal bankruptcy law. *See Artus v. Alaska Department of Labor, Employment Security Division, (In re Anchorage International Inn, Inc.),* 718 F.2d 1446, 1451 (9th Cir.1983). These liquor license debt collection laws, however, conflict with an equally important aspect of bankruptcy law, the order of priority for the payment of debts. In *Perez,* moreover, the Arizona statute arguably had as its general purpose deterrence of careless driving, clearly a proper state concern, albeit the effect of the statute was fatal in that it forced payment of discharged debts. We here deal with a statute that has nothing to do with the promotion of safety or order in the sale of alcoholic beverages. It is a debt collection measure, pure and simple.

The Commissioner did not appeal from the Court's prior order which allowed the sale and required the license sales proceeds to be held in escrow pending a determination of the Commissioner's rights therein. Because of that order, he released his administrative hold on the transfer with the ABCC. Thus the precise question before the Court is as to the Commissioner's property rights in the proceeds. Recognizing this, the Commissioner has constructed an elaborate argument in an attempt to

convince the Court that he has property rights in the license and its proceeds. He points to the *prima facie* right which a license holder has to renewal under the terms of MASS.GEN.L. ch. 138, § 16A.[2] *See Piona v. Alcoholic Beverages Control Commission*, 332 Mass. 53, 123 N.E.2d 390 (1956). *Piona v. Board of Selectmen of Town of Canton*, 333 Mass. 510, 131 N.E. 2d 766 (1956). The Commissioner quite properly characterizes the *prima facie* right to renew as a valid property interest. And he is correct in describing it as a right which is conditional upon compliance with the Commonwealth's tax laws. The Court and the Commissioner part in their analysis, however, when the Commissioner concludes that he thereby has a property interest in the license. He refers to this interest as one which is analogous to a lien. Relying on the Ninth Circuit cases previously referred to, he argues that the Commonwealth, as the Debtor's transferor, had a number of severable rights in the license, not all of which were given to the Debtor.

The Commissioner is chasing a will-o-the-wisp in seeking to assert a property interest. Because the Commissioner unquestionably has no claim to the beneficial use of the license, and his rights are necessarily extinguished upon payment of all taxes due, his asserted property interest is a lien or it is nothing. Section 49A makes no use of the term "lien." This is in contrast with such statutes as the Massachusetts mechanics lien statutes which expressly state that liens are being authorized and provide procedures for their enforcement through

sale. *See* MASS.GEN.L. ch. 254. The right of sale and payment from the proceeds is the hallmark of any property interest which is designed to enforce payment of a debt. Perhaps the prime example is a security interest under the Uniform Commercial Code. See MASS.GEN.L. ch. 106, § 9–504.

We conclude that the Commissioner had no property interest in the license, and consequently has none in its proceeds. We therefore do not reach the question of whether the asserted statutory lien or its analogue would be valid under § 545 of the Bankruptcy Code as a lien which is perfected or enforceable against a bona fide purchaser of the license rights. The Commissioner had ample opportunity to obtain a lien by observing the filing requirements of MASS.GEN.L. ch. 62C, § 50.[3] He has not done so.

The Debtor, in its original application, sought authority to disburse the remaining $13,000 to the Internal Revenue Service by reason of its filed tax lien. The Internal Revenue Service not having lodged with the Court any claim to the fund, the Debtor now suggests that the fund be released to it. A separate judgment shall direct Debtor's counsel, as the escrow agent, to pay the complete fund to the Internal Revenue Service unless counsel is in doubt as to the validity or extent of its lien, in which event he may apply to the Court for instructions.

2. § 16A. Limitation of Licenses to Be Granted.
Licenses issued under section twelve or fifteen shall be automatically renewed for the next annual license period upon application by the holder thereof during the month of November and shall be automatically renewed for a renewal of a seasonal license for the next seasonal licensing period upon application during the month prior to the commencement of the seasonal period upon payment of the fee, provided that said license is of the same type as the expiring license and covers the same licensed premises. If the application does not meet the conditions hereunder, it shall be treated as an application for a new license and all the procedures set forth under section fifteen A shall be applicable thereto. If in any year the number of such licenses so issuable is less than the

number of such holders or former holders so applying, such applicants shall be prima facie entitled to renewals in the order of the dates of their respective applications, to the extent that the same are issuable under section seventeen. Any such application may, however, be rejected for cause, subject to appeal under section sixty-seven. A person whose application has so been rejected by the local licensing authorities shall for the purposes of section seventeen be deemed to have been granted such a license until the period for such an appeal has expired or until his appeal has been dismissed.

3. It should be observed that any such lien would nevertheless be subject to the restrictions contained in 11 U.S.C. § 724.