In re PUB DENNIS OF MINERAL
SPRING AVENUE, INC., Debtor.

PUB DENNIS OF MINERAL SPRING
AVENUE, INC., D.A.D. Restaurant,
Inc., Plaintiffs,

v.

TOWN OF NORTH
PROVIDENCE, Defendant.

Bankruptcy No. 89–11092.
Adv. No. 91–1005.

United States Bankruptcy Court,
D. Rhode Island.

April 26, 1991.

Russell D. Raskin, Raskin & Berman, Providence, R.I., for debtor/plaintiff.

Albert R. Romano, Mackie, McDonald & Romano, Providence, R.I., for plaintiff, D.A.D. Restaurant, Inc.

Bernard J. Lemos, Rhode Island Div. of Taxation, Providence, R.I., for State of R.I. Tax Adm'r.

Robert Ciresi, Town Solicitor's Office, North Providence, R.I., for defendant.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on February 5, 1991 on the Complaint of D.A.D. Restaurant, Inc. (D.A.D.) to allow the transfer of Debtor's liquor license to D.A.D., and on the objection of the Rhode Island State Tax Administrator (Administrator). At the outset, a little background is in order.

On December 21, 1991, the Chapter 7 Trustee filed a Notice of Intended Sale of the liquor license. Under local rule, that procedure is required prior to a transfer of the assets of the Debtor free and clear of all liens. Contemporaneously, the Trustee filed a Motion to Shorten Time to respond to the Notice, to December 31, 1990.

The proposed sale [1] includes all the fixtures and equipment of the Debtor, its li-

---

1. An unsavory, but not dispositive aspect of the fact pattern is that the transferee, D.A.D., is a

quor license, and other permits. The purchase price of $100,000 includes the assumption of a secured debt in the amount of $99,000 to Greater Providence Deposit & Trust Corporation, and $1,000 in cash. The Notice of Intended Sale was approved on January 3, 1991, and the Motion to Shorten Time was granted on the same date.

On January 8, 1991, with no objection having been filed, the Court entered an Order directing the Town of North Providence to authorize the transfer of the Debtor's liquor license to D.A.D. On January 30, 1991, we vacated that Order on the motion of the Tax Administrator, who: (1) claimed lack of notice; and (2) sought to condition the transfer on payment of postpetition "trust fund tax liabilities."[2] At the hearing, the Administrator acknowledged that his agency had received the Notice of Intended Sale. He also conceded that no objection was filed, nor was an appeal taken from the entry of the Order in question.

In opposing the Administrator's motion, the Debtor characterizes our January 8th Order as an administrative and ministerial act, done pursuant to the approved Notice of Sale, in accordance with the regular practice of this Court's compliance with the decision in *In re Hoffman*, 65 B.R. 985 (D.R.I.1986), *aff'g* 53 B.R. 874 (Bankr.D.R. I.1985). Although we also view the January 8 document as a routine "Hoffman Order," we vacated it out of an abundance of caution, recognizing the shortened service, the alleged lack of notice, and the arguably conflicting case law presented by the Administrator.

After hearing arguments of counsel, the matter was taken under advisement and we requested memoranda addressing the question whether the cases cited by the Administrator, including a decision by the United States Court of Appeals for the Third Circuit, *In re Begier*, 878 F.2d 762 (3d Cir. 1989), *aff'd*, — U.S. —, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990), warranted a modification of, or departure from, our "Hoffman" practice.

## DISCUSSION

■ The issue decided in *Hoffman* was whether the state could "condition the transferability of the debtor's liquor license on the payment of delinquent taxes." *Hoffman*, 65 B.R. at 986. In that case United States District Judge Selya affirmed the decision of the Bankruptcy Court, ruling in unequivocal terms that "it is clear beyond cavil that the debtor's liquor license, whatever may be its dimensions ..., constitutes 'property'" within the definition of 11 U.S.C. § 541(c)(1)(A). *Id.* (citations omitted). Section 541(c)(1) provides, in part, that "an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable non-bankruptcy law–(A) that restricts or conditions transfer of such interest by the debtor...." Judge Selya's ruling is consistent with the Supreme Court's expansive reading of 11 U.S.C. § 541. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). *See also In re Gull Air, Inc.*, 890 F.2d 1255 (1st Cir.1989)

corporation whose principal shareholder is the wife of the Debtor's principal shareholder. Clearly, she would be an "insider" as defined by 11 U.S.C. § 101(30)(B)(vi). The Administrator raised this issue in his motion to vacate, yet was inclined not to pursue the issue at the Court's invitation during a conference held on April 23, 1991. The United States Trustee and the Chapter 7 trustee in the case also declined to object to the insider transfer, which netted $1,000 to the estate. The Debtor's attorney admits no advertising efforts were made.

2. The Tax Administrator claims that the Debtor owes $44,173.31 in pre-petition sales taxes, and $593.92 in income taxes. Post-petition, the

Debtor owes an indeterminate amount for the period April through November, 1990 in sales taxes, and $2,055.98 in income taxes. Although we may empathize with the Tax Administrator's distaste for the result, considering the facts in this particular case, as a Court bound to follow the clear provisions of the Bankruptcy Code and the controlling cases that have interpreted the applicable statutes, we do not enjoy the luxury or the equitable flexibility that the Tax Administrator suggests we should exercise. As an aside, in this case, it would be our personal preference to rule as the Administrator requests, if we had the authority to do so.

(air carrier landing slots are proprietary in nature). *Contra In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir.1983).

■ Having determined the license to be property of the estate, Judge Selya overruled the Tax Administrator's objection to the transfer free and clear of all liens. In so concluding, he rejected the argument that R.I.GEN.LAWS § 3–7–24 (requiring payment of delinquent taxes prior to the license transfer) falls within the "police or regulatory power" exception to the automatic stay. 11 U.S.C. § 362(b)(4). Focusing on the nature of the state statute, Judge Selya had no difficulty in branding the statute as a revenue collection measure which, as a "pecuniary" type of legislation, would not fall within the exception.[3] *See In re Thomassen*, 15 B.R. 907, 909 (Bankr. 9th Cir.1981); *In re Mason*, 18 B.R. 817, 821–22 (Bankr.W.D.Tenn.1982).

Furthermore, the absence of any control by the Tax Administrator over the issuance, removal, or transfer of liquor licenses undercuts the characterization of § 3–7–24 as a police power statute. The Tax Administrator's attempt to use § 3–7–24 as "a cudgel to club a trustee in bankruptcy into submitting to the monetary demands of the Division [of Taxation] as a precondition to transfer ..." is clearly not permitted in the First Circuit. *Hoffman*, 65 B.R. at 991.[4] The Supremacy Clause permits no other conclusion. U.S. Const. art. VI, cl. 2. *Accord In re Kick–Off, Inc.*, 82 B.R. 648, 650 (Bankr.D.Mass. 1987).[5]

Additionally, R.I.GEN.LAWS § 3–5–19 provides that

"[i]n all cases of transfer of license, indebtedness of the licensee incurred in the operation of the licensed premises shall be paid to or released by an objecting

creditor before the issuing body shall permit the transfer.... [but n]o creditor shall be allowed to object to transfer of a license by a ... *trustee in bankruptcy....*"

(emphasis added). This section alone is dispositive, without the extensive treatment we are giving this matter (primarily in response to the Tax Administrator's repeated complaints about *Hoffman* sales, as they continue to occur).

It should be clear by now that *Hoffman* is controlling upon this Court on the issue of liquor license transfers, and we remind the Tax Administrator that other jurisdictions have agreed with *Hoffman* and apply it without difficulty. *See, e.g., In re Nejberger*, 120 B.R. 21, 23 (E.D.Pa.1990) (Pennsylvania Liquor Code provisions not designed to protect health, safety, or welfare concerns); *In re Kick–Off, Inc.*, 82 B.R. 648, 650–51 (Bankr.D.Mass.1987) (Tax Commissioner had no property interest in liquor license; Supremacy Clause invalidated license transfer restrictions); *In re Terwilliger's Catering Plus, Inc.*, 86 B.R. 937, 939 (Bankr.S.D.Ohio 1988), *aff'd,* 911 F.2d 1168 (6th Cir.1990) (liquor license became property of the estate upon filing of the bankruptcy petition).

## POST–PETITION TAXES

■ The instant dispute arises in a factual and legal context nearly identical to *Hoffman*, except to the extent that *Hoffman* may be limited to the collection of *pre-petition* taxes, and in that regard, the Administrator seeks here to condition the subject license transfer on payment of *post-petition* taxes.

The Administrator concedes that he has located no case law on the status of post-

---

**3.** The pecuniary/police distinction originated in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). *See also Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). The result has been codified in 11 U.S.C. § 525(a).

**4.** Although the 21st Amendment to the United States Constitution gives the states authority to regulate liquor distribution, the statute is but a "legislative device designed to foster the collec-

tion of delinquent debts." *Hoffman,* 65 B.R. at 993. It is not a liquor control measure.

**5.** Although the Ninth Circuit has taken a different view of similar statutes, *In re Farmers Markets, Inc.,* 792 F.2d 1400 (9th Cir.1986); *In re Anchorage Int'l Inn, Inc.,* 718 F.2d 1446 (9th Cir.1983); *Matter of Professional Bar Co., Inc.,* 537 F.2d 339 (9th Cir.1976), the applicability of these decisions appears to be limited to the Ninth Circuit. *See Kick–Off,* 82 B.R. at 650.

petition trust fund taxes in relation to the "debtor's estate," but notwithstanding that precedential void, argues that by virtue of 11 U.S.C. § 346(f) (requiring the trustee to withhold, collect, and pay any state or local taxes), no case law should be available because trustees and debtors-in-possession would normally be expected to carry out express code provisions. Without commenting on the real-life merits of that argument, decisional silence on this subject does little to advance the Administrator's contention that non-payment of post-petition taxes should change the outcome. We see no reason to distinguish post-petition from pre-petition delinquencies, in the *Hoffman* context.

## TRUST FUND TAXES

■ The Administrator makes an additional two pronged argument: 1) that the taxes due are "trust fund" taxes as defined by state law and by analogous federal case law; and, 2) that as trust funds, *only in the possession* of the Debtor, they are not property of the estate.

We agree with the Administrator's statements that state law characterizes the income withholding taxes at issue as funds "in trust for the tax administrator," R.I. GEN.LAWS § 44–30–76(a), and that the sales taxes involved are a "trust fund for the state until paid" to the Administrator. R.I.GEN.LAWS § 44–18–21(a). The Administrator urges that in this situation (which involves the liability of third parties), the Debtor is only a "statutory agent" for the state and cannot be discharged of the responsibility to remit those funds to the state. We feel, again, that *Hoffman* correctly resolves whatever tension may exist between §§ 3–5–19 and 3–7–24 (later enacted) in favor of the unambig-

uous terms of § 3–5–19: "no creditor shall be allowed to object to transfer of a [liquor] license by a . . . trustee in bankruptcy." *See Hoffman*, 65 B.R. at 991–92; *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153, 96 S.Ct. 1989, 1992, 48 L.Ed.2d 540 (1976) (statute dealing with precise subject not submerged by later enacted statute). Inasmuch as *Hoffman* and the instant dispute both deal with so called "trust fund" taxes, we continue to be bound by Judge Selya's ruling.

The Administrator has cited numerous cases dealing with trust fund taxes. *See, e.g., Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978) (FICA taxes and income taxes withheld constitute a special fund in trust for the United States); *DeChiaro v. Tax Comm'n*, 760 F.2d 432 (2d Cir.1985) (state sales taxes are a trust fund not subject to discharge); *Rosenow v. Dept. of Revenue*, 715 F.2d 277 (7th Cir.1983) (state sales taxes are trust fund taxes subject to priority treatment under § 507(a)(7)(C)). The Administrator then argues that the extension and application of these cases to those dealing with the issue of whether the trust funds at issue are property of the estate (for the purpose of the voidable preference provision of 11 U.S.C. § 547(b)), requires the conclusion that payment of these funds may be a condition of the license transfer. Again, we must disagree. Despite the language of several of these decisions discussing the "tracing" of trust funds in property of the estate, *see Drabkin v. District of Columbia*, 824 F.2d 1102 (D.C.Cir.1987) and *Begier v. I.R.S.*, 878 F.2d 762 (3d Cir. 1989), *aff'd*, —— U.S. ——, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990), the proprietary status of said funds is not determinative of the transferability of a liquor license.[6] The

---

**6.** In *Begier*, the United States Supreme Court affirmed the Third Circuit's opinion holding that,

> a trustee in bankruptcy may 'avoid' (*i.e.*, recover) from the Internal Revenue Service payments of certain withholding and excise taxes that the debtor made [pre-petition]. We hold that the funds paid here were not the property of the debtor prior to payment; instead, they were held in trust by the debtor for the IRS.

We accordingly conclude that the trustee may not recover the funds.

*Begier v. I.R.S.*, —— U.S. ——, 110 S.Ct. 2258, 2261, 110 L.Ed.2d 46 (1990). Because § 547(b) is limited to "transfers of property of the debtor," the Court focused only on the nature of the I.R.S. "trust funds."

In *United States v. Whiting Pools*, 462 U.S. 198, 205, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983), the Court held that the I.R.S. could not exclude funds from the estate if it could not

Administrator's arguments to the contrary notwithstanding, the controlling factor is not whether the trust funds are property of the estate, but whether the license is property of the estate. In this District, and nearly uniformly elsewhere, the issue of license transferability has been resolved as we have done herein. *See* cases cited *supra.* Both the automatic stay, § 362(a), and R.I.GEN.LAWS § 3–5–19 clearly foreclose the Tax Administrator from preventing the transfer at issue.

We have examined the trust fund "property of the estate" issue, and its attendant tracing discussions in the Tax Administrator's cited cases, but find that they address questions not germane to the resolution of this dispute. We fail to see the relevance of these opinions vis-a-vis the Tax Administrator's objection to the transfer, even assuming arguendo that the taxes due, both pre-petition and post-petition, are *not* property of the estate. We therefore conclude that the Administrator's objection (on the narrow issue before us) to the license transfer in question is not well founded.

Accordingly, the Administrator's objection to the liquor license transfer from the Debtor to D.A.D. is OVERRULED, and our prior order instructing the Town of North Providence to authorize the license transfer is REINSTATED.

Enter Judgment consistent with this opinion.

"trace" them to 26 U.S.C. § 7501 trust property which section provides:

> Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose.

26 U.S.C. § 7501(a). In defining the required nexus between the § 7501 trust and the assets sought to be applied to the trust fund obligations, the Court in *Begier* concluded (after a thorough review of the legislative history) that a trustee may not avoid *any* voluntary pre-petition payment of trust fund taxes, from whatever source. *Begier,* 110 S.Ct. at 2267. Such a voluntary payment established the required nexus "between the amount held in trust and the funds paid." *Id.*

This tracing rule involves permissibly "reasonable assumptions" on the part of the courts which should therefore withstand scrutiny. The D.C. Circuit had reached a contrary result in *Drabkin* with respect to a District of Columbia statute similar to § 7501, albeit with a sharply worded dissent. *See Drabkin,* 824 F.2d at 1116–17; *Id.* at 1118–19 (Ginsburg, J., dissenting).