In re Mark D. POMPEO, Debtor.

Mary REITMEYER, Trustee, Plaintiff,

v.

PENNSYLVANIA DEPT. OF REVENUE,
Pennsylvania Dept. of Labor & Industry,
and Pennsylvania Liquor Control Board,
Defendants.

Bankruptcy No. 93–21058–MBM.
Adv. No. 95–02275–MBM.

United States Bankruptcy Court,
W.D. Pennsylvania.

April 24, 1996.

Mary Reitmeyer, Trustee, Pittsburgh, PA.

A. Jay Molluso, Office of Attorney General, Financial Enforcement Section, Pittsburgh, PA, for Pennsylvania Liquor Control Board and Pennsylvania Department of Revenue.

Deborah C. Phillips, Commonwealth of Pennsylvania, Department of Labor & Industry, Office of Employment Security, Pittsburgh, PA.

## MEMORANDUM OPINION

By M. BRUCE McCULLOUGH, Bankruptcy Judge, for the Court en banc with BERNARD MARKOVITZ, Chief Judge, and WARREN W. BENTZ, JUDITH K. FITZGERALD and JOSEPH L. COSETTI, Bankruptcy Judges.

### STATEMENT OF FACTS

This adversary proceeding is decided collectively by the judges of the Bankruptcy Court for the Western District of Pennsylvania sitting *en banc.* The proceeding determines the priority in bankruptcy of a reserved interest allegedly retained by the Pennsylvania Departments of Revenue and Labor & Industry and the Pennsylvania Li-

quor Control Board (PLCB) (hereafter collectively referred to as "the Commonwealth of Pennsylvania") in a liquor license. The proceeding is part of a Chapter 7 bankruptcy case for Mark D. Pompeo, who initially filed a voluntary petition under Chapter 13 on May 29, 1993. The case was converted to a Chapter 7 case on October 13, 1993, and Mary Reitmeyer, plaintiff in this proceeding, was then appointed as trustee.

On May 26, 1995, plaintiff filed a motion to sell the debtor's Pennsylvania liquor license free and clear of any liens and encumbrances. Plaintiff's motion indicates that plaintiff had received an offer of $30,000 for debtor's liquor license. At all times, plaintiff has maintained that such license is the sole property of the bankruptcy estate. Defendants objected to plaintiff's outright sale of the license,[1] asserting that plaintiff could not sell such license unless, pursuant to 47 Pa. Cons.Stat.Ann. § 4–477(d)(3) (Purdon 1995),[2] payment was made of outstanding taxes owed by the debtor to the Commonwealth. Therefore, defendants initially sought to condition such sale upon plaintiff's payment of such taxes at closing. However, defendants ultimately consented to the sale outright of the license. Each side also agreed to preserve for future disposition the issues raised by defendants' objections, with satisfaction of said taxes, if defendants were ultimately successful, from the proceeds of the sale.

Because these facts were not in dispute, both parties brought motions for summary judgment with respect to their positions. Subsequent proceedings have not revealed any further factual disputes. Plaintiff seeks a declaratory judgment to the effect that defendants' claims for outstanding taxes only be satisfied to the extent, and according to the priorities, as set forth in the Bankruptcy Code. Defendants' motion seeks an order to the effect that they are entitled to as much of the proceeds from the sale of the liquor license as are necessary to satisfy the debtor's preexisting outstanding state taxes.

Plaintiff asserts the following in support of its motion for summary judgment:

1. Pursuant to 47 Pa.S.A. § 4–477(d)(3), defendant Pennsylvania Liquor Control Board ("PLCB") may allow the transfer of a liquor license without payment of outstanding state taxes if such taxes are "subject to a duly authorized deferred payment plan." Distribution pursuant to Chapter 7 of the Bankruptcy Code constitutes a "duly authorized deferred payment plan" with respect to defendants' claims for outstanding state taxes. Therefore, as defendants' claims will be satisfied through such "plan," they should not have their claims satisfied immediately out of proceeds from the sale of the license.

2. If distribution pursuant to Chapter 7 of the Bankruptcy Code does not constitute a "duly authorized deferred payment plan," 47 Pa.S.A. § 4–477(d)(3) is preempted to the extent that it grants to the Commonwealth an immediate and superior right to satisfy its tax claims from the proceeds of the license transfer unaffected by the distribution and priority provisions of the Bankruptcy Code. Although the Pennsylvania statute appears to provide the Commonwealth with such an unaffected priority even in a bankruptcy setting, such right results in the payment of their tax claims in a manner other than that envisioned by the Bankruptcy Code. Pursuant to article VI, clause 2 of the U.S. Constitution (the Supremacy Clause), such statute, even if a proper exercise of defendants' police power, must be rendered void to the extent of any direct conflict with federal law.

In support of their motion for summary judgment, defendants make the following assertions:

---

1. According to statements made by the trustee at the final hearing, the PLCB did not object to the outright sale or transfer of the license. Only the Departments of Revenue and Labor & Industry objected to the trustee's sale. Transcript of February 15, 1996 at 9.

2. 47 Pa.S.A. § 4–477(d)(3) provides that "[t]he board shall not approve any application for the grant, renewal or transfer of any license issued pursuant to this article where the applicant has failed to ... pay any State taxes not subject to a timely administrative or judicial appeal or subject to a duly authorized deferred payment plan."

1. A Chapter 7 distribution to defendants does not constitute a "duly authorized deferred payment plan" such that the PLCB, in its discretion, may permit the transfer by plaintiff of debtor's liquor license without immediate satisfaction of outstanding state tax claims from sales proceeds. Such a distribution does not constitute a deferred payment plan, nor is it authorized as contemplated by 47 Pa. S.A. § 4-477(d)(3). Such phrase refers to a plan instituted internally within the Pennsylvania state government by appropriate state officials.

2. State law determines the extent of a debtor's interest in property. A bankruptcy estate's interest in a debtor's liquor license, which is precisely equivalent to the interest that the debtor had in such license, is limited in that it is subject to 47 Pa.S.A. § 4-477(d)(3). Because 47 Pa.S.A. § 4-477(d)(3) requires the payment of outstanding state taxes by a licensee prior to the PLCB's approval of a license transfer, the value of the bankruptcy estate's interest in the license is equal to only that portion of any proceeds from its sale after satisfaction of outstanding state taxes therefrom. Because the bankruptcy estate's interest in the license is so constricted, immediate payment of defendants' tax claims from the proceeds of its sale will not conflict with the distribution structure of Chapter 7 of the Bankruptcy Code. Therefore, 47 Pa.S.A. § 4-477(d)(3) is not, in any way, preempted by federal law pursuant to article VI, clause 2 of the U.S. Constitution (the Supremacy Clause).[3]

Plaintiff, in its complaint, also asserted that defendants had violated the automatic stay by threatening to disrupt the outright sale of the debtor's liquor license. However, subsequent to defendants' consent to the outright sale of the license, plaintiff withdrew its request for sanctions regarding defendants' alleged violation of the automatic stay.[4]

■ For the reasons set forth hereinafter, we find for the Trustee and against the Commonwealth regarding their motions for summary judgment. We note at the same time that the Commonwealth has not asserted thus far, either at any of the hearings on this matter nor in any of its filed motions or briefs, its tax lien on the license sale proceeds pursuant to 72 Pa.S.A. § 1401. This statute grants to the Commonwealth "a first lien" upon property[5] of a taxpayer "from the

---

3. A Pennsylvania liquor license constitutes property of the debtor's estate pursuant to 11 U.S.C. § 541(a)(1). *In re Nejberger*, 934 F.2d 1300, 1302 (3rd Cir.1991); *In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168 (6th Cir.1990); *In re Kramer*, 71 B.R. 2 (Bankr.E.D.Pa.1986); and *In re Hodges*, 33 B.R. 51 (Bankr.E.D.Pa.1983). Defendants do not dispute this proposition but contend instead that only a portion of a Pennsylvania liquor license can be property of a bankruptcy estate.

4. Defendants were wise to consent to the transfer of the debtor's liquor license in light of case authority holding that a refusal to do so because of a bankrupt debtor's failure to pay outstanding state taxes violates the automatic stay. *In re Nejberger*, 120 B.R. 21 (E.D.Pa.1990), aff'g, 112 B.R. 714 (Bankr.E.D.Pa.1990); *In re Skyline Properties*, 128 B.R. 393 (Bankr.W.D.Pa.1991); *In re Hoffman*, 65 B.R. 985 (D.R.I.1986); and *In re Aegean Fare, Inc.*, 35 B.R. 923 (Bankr.D.Mass. 1983). The courts in these cases found that enforcement of such state statutes was not an exercise of the state sovereigns' police powers but rather merely an attempt to collect taxes. *Id.* Therefore, enforcement of such statutes is not exempted from the automatic stay under 11 U.S.C. § 362(b)(4) ("the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power"). *Id.*

5. Although it is not possible under Pennsylvania law to impose a lien upon a "privilege," *1412 Spruce v. Pennsylvania Liquor Control Board*, 504 Pa. 394, 474 A.2d 280, 283 (1984), taxing authorities (ie., the Pennsylvania Departments of Revenue and Labor & Industry) nevertheless may place a lien upon a liquor license, or proceeds from its sale, because such license constitutes property as between them and the licensee. The language of 47 Pa.S.A. § 4-468(d) (amended in 1987) supports this proposition. In particular, while this statutory provision states that a "[liquor] license shall constitute a privilege between the [Pennsylvania Liquor Control B]oard and the licensee," it further provides that, "[a]s between the licensee and third parties, the license shall constitute property." That taxing authorities are not the Liquor Control Board but rather are third parties appears to be obvious. However, this point is buttressed by a statement made by counsel for the Pennsylvania Department of Revenue in a letter to this Court dated December 7, 1995, wherein counsel points out that § 4-468(d) was proposed in order to "facilitate the state in executing on licenses held by delinquent taxpay-

date of settlement, assessment[,] or determination" of "[a]ll [s]tate taxes." An examination of the Commonwealth's filed proof of claims appears to indicate that the Commonwealth has filed copies of such lien in the appropriate locations. This lien, even if unfiled, is free from the reach of a trustee in bankruptcy's avoidance powers under either § 544 or § 545 of the Bankruptcy Code. *In the Matter of Regal Petroleum Products Company,* 287 F.Supp. 458, 461–62 (E.D.Pa. 1968), *aff'd,* 413 F.2d 299 (3rd Cir.1969); *In re Century Vault Company,* 416 F.2d 1035, 1037–38 (3rd Cir.1969); *see also In re Universal Minerals, Inc.,* 25 B.R. 799, 804 (Bankr.W.D.Pa.1982). However, because this interest is clearly a lien, it would be subordinated to any priority claims under 11 U.S.C. § 724(b)(2). Perhaps for this reason, the Commonwealth has yet to mention in any of its arguments this particular lien, instead proceeding only with respect to its claim of a reserved interest in the license itself.

### DISCUSSION

**I.** *Whether a Chapter 7 distribution constitutes a "duly authorized deferred payment plan" under 47 Pa.S.A. § 4–477(d)(3)?*

 Plaintiff's contention that a Chapter 7 distribution automatically qualifies as a duly authorized deferred payment plan called for under 47 Pa.S.A. § 4–477(d)(3) is incorrect and not supported by case authority. Language in the bankruptcy court opinion for *In re Daniel Nejberger,* 112 B.R. 714 (Bankr.E.D.Pa.1990), *aff'd,* 120 B.R. 21

(E.D.Pa.1990), *aff'd on other grounds,* 934 F.2d 1300 (3rd Cir.1991), indicates that a provision in a confirmed Chapter 11 plan for payment of outstanding state taxes would constitute an acceptable deferred payment plan under the Pennsylvania statute. *Id.* at 722. However, the bankruptcy court in *Nejberger* also noted that "11 U.S.C. § 1129(a)(9)(C) would require the debtor to repay the [state tax] obligation *in full,* with interest, over not more than a six year period." *Id.* at 723 (emphasis added). Distribution under Chapter 7 of the Bankruptcy Code, in contrast, does not necessarily result in full payment of a claim and, in fact, will likely not result in full payment of the Commonwealth's claim in this proceeding.[6] For this reason, a Chapter 7 distribution, as opposed to a repayment scheme included in a confirmed Chapter 11 reorganization plan, should not constitute a "duly authorized deferred payment plan" unless full payment of the Commonwealth's tax claim can be assured. It seems clear that the Commonwealth could not have contemplated as a "duly authorized deferred payment plan" a scheme which did not ultimately result in full payment of its tax claim.

**II.** *Is 47 Pa.S.A. § 4–477(d)(3) in direct conflict with the distribution provisions of Chapter 7 of the Bankruptcy Code, and thus void to the extent of such conflict as mandated by article VI, clause 2 of the U.S. Constitution (the Supremacy Clause)?*

There is a split in authority regarding plaintiff's assertion that 47 Pa.S.A. § 4–

---

ers." Given *1412 Spruce,* this statement could not be true if a license constitutes a privilege as between taxing authorities, or the Commonwealth in general, and the licensee.

**6.** Under either of two scenarios the Commonwealth will not be paid in full. The Department of Revenue has filed a claim for $24,175.40, asserting that such claim is secured by the liquor license. The Department of Labor & Industry has filed an unsecured priority claim of $313.50. Judith A. Pompeo, the debtor's ex-wife, has asserted a right to be subrogated, in the amount of $10,127.00, to the identical priority status of the Department of Revenue for her payment to it of an obligation of the debtor. These three claims total $34,615.90. Assuming that these three claims are actually secured by the license, they would nevertheless be subordinated to priority claims under 11 U.S.C. § 507(a)(1)–(7) in a

Chapter 7 liquidation pursuant to 11 U.S.C. § 724(b)(2). After subtracting from the $30,000 in sale proceeds any priority claims, as well as expenses of the license sale, substantially less than $34,615.90 would remain for distribution.

Even if these claims are not secured by the license, they would nevertheless be secured by the Commonwealth's tax lien granted at 72 Pa. S.A. § 1401. This lien, which cannot be avoided by a trustee in bankruptcy, would receive priority over a $4,500 priority tax claim of the Internal Revenue Service (IRS) because the IRS has apparently failed to file a notice of its lien with respect to its tax claim prior to the institution of this bankruptcy case. However, because the Commonwealth's claims would still be subordinated to priority claims under § 507(a)(1)–(7) pursuant to § 724(b)(2), they would still not be paid in full.

477(d)(3) is in direct conflict with the distribution provisions of Chapter 7 of the Bankruptcy Code, and thus void to the extent of such conflict as mandated by article VI, clause 2 of the U.S. Constitution (the Supremacy Clause).[7] Plaintiff's position has been followed in *In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168 (6th Cir.1990), and *In re Kick–Off, Inc.*, 82 B.R. 648 (Bankr. D.Mass.1987), *aff'd*, 1988 WL 123927 (D.Mass.1988), and is supported by language in at least two other opinions, *In re Hoffman*, 65 B.R. 985 (D.R.I.1986), *aff'g*, 53 B.R. 874 (Bankr.D.R.I.1985) and *In re Aegean Fare, Inc.*, 35 B.R. 923 (Bankr.D.Mass.1983). However, defendants' stance—that the bankruptcy estate's interest in the license is limited by 47 Pa.S.A. § 4–477(d)(3) such that the value of the estate's interest is equal to only that portion of any proceeds from its sale after satisfaction of outstanding state taxes therefrom—is also supported by a substantial line of case authority in the Ninth Circuit. See *In re Farmers Markets, Inc.*, 792 F.2d 1400 (9th Cir.1986); *Matter of Professional Bar Co.*, 537 F.2d 339 (9th Cir.1976); and *In re Kimura*, 969 F.2d 806 (9th Cir. 1992).

### 1. *The 6th and 9th Circuit Decisions.*

**A. *Terwilliger* majority.** *Terwilliger* involved a competition in a bankruptcy setting between the State of Ohio Department of Taxation and the Internal Revenue Service (IRS) for proceeds from the sale of a liquor license. As support for its position that it had priority over the IRS with respect to the proceeds, the State of Ohio relied on a statute very similar in language and purpose to the Pennsylvania statute pertinent in our case. The Sixth Circuit held that the IRS' tax lien was entitled to priority because Ohio's interest, which the Sixth Circuit analyzed as a lien, was not "the first in time" to perfect. *Terwilliger*, 911 F.2d at 1176. It was not "the first in time," according to the

Sixth Circuit, because it was still inchoate. *Id.* at 1177.

■ Before the Sixth Circuit proceeded to analyze Ohio's reserved interest in the liquor license as a lien, it stated that *"[i]f* the state's interest is to receive any protection in the case before us, it *must* qualify as a lien or similar security interest that has priority over a federal tax lien in a bankruptcy proceeding." *Id.* at 1175 (emphasis added). This clearly indicates that the Sixth Circuit, while unsure of the true nature of Ohio's interest, at least felt that any other type of interest would have received no protection under the Bankruptcy Code. The rationale for this conclusion is set forth earlier in the Sixth Circuit's opinion where it states:

> If we find this statute *preempted by federal law*, then the federal government receives the sales proceeds to satisfy its tax lien.... The question is not whether the state has reserved an interest in the license or placed a limitation on the debtor's interest in the license. Rather, the question to be answered is whether the state's debt collection method is a property interest *that can be asserted in a bankruptcy proceeding to collect debts* owed to the state ahead of payment of a perfected federal tax lien.

*Id.* at 1173 (emphasis added). This language clearly indicates that the Sixth Circuit detected a possible Supremacy Clause conflict between the Ohio statute and the distribution priorities set forth in the federal bankruptcy law. More importantly for our purposes, the clear implication of the Sixth Circuit's analysis is that Ohio's reserved property interest, if construed as anything other than a lien on the liquor license, is preempted by the Bankruptcy Code. The Sixth Circuit only analyzed Ohio's interest as a lien after making this determination, and as a means of affording the state some measure of protection,[8] albeit ultimately futile.

7. Article VI, clause 2 of the United States Constitution provides that:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land;

and the Judges in every State shall be bound thereby, any thing in the Constitution or Laws of any State to the contrary notwithstanding.

8. This is consistent with the general rule of statutory construction that "[w]hen the validity of an act of ... [a state legislature] is drawn in[to] question, and even if a serious doubt of constitu-

**B.** *Terwilliger* **dissent and 9th Circuit cases.** One of the three judges from the Sixth Circuit dissented from the opinion in *Terwilliger.* According to the dissent, the majority should have first concerned itself "with the nature of the property to which the federal tax lien ... [was] said to have attached." *Terwilliger,* 911 F.2d at 1178. According to the dissent, "reference to Ohio law establishes that ... the state retained an incident of ... [the license's] ownership when ... it withheld the absolute right to dispose of the license." *Id.* Therefore, because "the debtor's property interest in the license ... never was absolute, ... the debtor [and, thus, the estate] took the license without the reserved incident of ownership." *Id.* Extending the logic of the dissent's rationale, because the IRS' federal tax lien could only have attached to that portion of the license which was property of the estate, the IRS' lien could not have attached to Ohio's reserved incident of ownership. That being the case, the practical value of the IRS' federal tax lien should have been the amount of the sales proceeds remaining after satisfaction of Ohio's state tax claims. *Id.* at 1179. The dissent in *Terwilliger* notes that its position is consistent with the Ninth Circuit's line of decisions mentioned above—i.e.,

*Farmers Markets* and *Professional Bar Co. Id.* at 1178–79.[9]

**C.** For reasons set forth below, this Court finds more persuasive the rationale of the Sixth Circuit majority in *Terwilliger.* Additionally, this Court decides—in the negative—the issue, passed on by the Sixth Circuit, whether a state's reserved debt collection interest in a license will be protected in a bankruptcy proceeding where the only competitor for the license sale proceeds is the trustee.[10] Our decision in this regard is supported by the reasoning of the bankruptcy court in *Kick–Off,* which dealt with precisely this issue. *Kick–Off,* 82 B.R. at 649–50.

**2.** *The Supremacy Clause Conflict.*

The cornerstone of the Sixth Circuit majority's decision in *Terwilliger* appears to have been its finding that Ohio's reserved lien-like property interest conflicted with federal bankruptcy law. While the dissent in *Terwilliger* did not address this issue, the Ninth Circuit has attempted to deal with the Supremacy Clause conflict. *See, e.g., Farmers Markets,* 792 F.2d at 1403 and *Professional Bar Co.,* 537 F.2d at 340 note 2.[11]

---

tionality is raised, it is a cardinal principle that ... [a c]ourt will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932). Thus, the Sixth Circuit, rather than void Ohio's interest entirely via preemption, attempted to view it in the only manner by which it could avoid a confrontation with the Supremacy Clause—i.e., as a lien.

**9.** Although the dissent in *Terwilliger* alleges an oversight by the Sixth Circuit majority, we discern an oversight on the part of the dissent—in particular, that it did not deal with whether Ohio's reserved interest in the license could be recognized as the State wished in a bankruptcy case. This issue ultimately devolved into the majority's concern over whether the Ohio statute improperly conflicted with federal bankruptcy law.

**10.** *See Terwilliger,* 911 F.2d at 1175. The Sixth Circuit also judiciously refused to decide "whether the state can generally enforce ... its reserved debt collection right to gain priority in a bankruptcy proceeding under section 724(b)(4) or (d)." *Id.* at 1177 note 12. A decision on this issue was unnecessary because (i) Ohio had not

perfected its interest prior to perfection by the IRS of its lien, and (ii) "[b]oth the state and federal liens secure[d] debts in excess of the sale price of the license." *Id.* at 1175. Our decision will most certainly encompass this issue as well.

**11.** In a number of cases decided under the Bankruptcy Act of 1898, the Ninth Circuit held that a state could not collect, in connection with its reserved property interest, post-petition interest or tax penalties. *State Board of Equalization v. Stodd,* 500 F.2d 1208, 1210 (9th Cir.1974); *In re Petite Auberge Village, Inc.,* 650 F.2d 192, 195–96 (9th Cir.1981); and *In re Del Mission Ltd.,* 116 B.R. 734, 736 (Bankr.S.D.Cal.1990). The Ninth Circuit so held because the Bankruptcy Act did not allow assets of the bankruptcy estate to be used to pay tax penalties and post-petition interest. *Stodd,* 500 F.2d at 1209–10 (citing § 57j of the Bankruptcy Act). [11 U.S.C. § 726(a)(4), (5) permits payment of these items, although they are subordinated to most other claims] This rationale seems to be at odds with the Ninth Circuit's position that a state sovereign's reserved interest never becomes property of the bankruptcy estate. Indeed, if the state's interest in the liquor license cannot be property of the bankruptcy estate, then collection of interest and penalties relating to such property interest

■ The U.S. Supreme Court approaches conflicts between state and federal laws as follows: " '. . . in the final analysis,' our function is to determine whether a challenged state statute 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). The Ninth Circuit has approached the conflict in a bankruptcy setting by determining (a) that "there is no *general* federal policy against state-created liens that favor one class of creditors over others," and (b) that "[n]o statutory bankruptcy policy forbids a state from giving one creditor a greater right to payment of his claim from a given asset than that conferred on another." *In re Anchorage International Inn, Inc.*, 718 F.2d 1446, 1451 (9th Cir.1983) (this case cited with approval *Professional Bar Co.*). However, this determination seems to ignore certain provisions of the Bankruptcy Code that unquestionably act to nullify or modify, to a certain extent, particular liens created by a state in its own favor (in particular, tax and tax-like liens).[12] *See, e.g.,* 11 U.S.C. §§ 724, 544 & 545. Congress, by enactment of certain provisions of the federal bankruptcy law, *has* enunciated a *specific* federal policy against certain state-created liens when applied in the bankruptcy context.

Defendants in this case, as well as state sovereigns in the Sixth and Ninth Circuit cases, have attempted to avoid a Supremacy Clause conflict by fashioning their priority right as a "reserved lien-like property right" rather than as a lien. This maneuver, however, does not avoid such a conflict. Congress, in enacting 11 U.S.C. § 724, 544 and 545, as well as their Bankruptcy Act precursors, intended to nullify, modify or subordinate tax *liens* and *liens* similar to tax *liens*. By using the term "lien," Congress could not also have intended to exempt from subordination reserved priority interests with the ultimate effect of a lien but that were not so entitled. Adherence to such form over substance would only partially have accomplished, and ultimately would most certainly subvert, Congress' objective.[13] The Sixth Circuit noted as much in *Terwilliger*, stating that "[i]n a sense, all debt collection methods that purport to attach to a particular interest in property serve to limit a debtor's interest in the property. Nevertheless, many such interests are not effective to secure a debt in bankruptcy. . . ." *Terwilliger*, 911 F.2d at 1173. Thus, merely labelling as a "reserved property interest" what is, in effect as well as intent, an attempt by defendants to create a lien, will not avoid a conflict with the federal

---

should not have had to comply with the provisions of the Bankruptcy Act. The state of California unsuccessfully advanced precisely this argument in *Stodd*. *Id.* at 1209–10. Why the Ninth Circuit felt that a state's reserved property interest would be subject to federal bankruptcy law in one context (collection of tax penalties and post-petition interest related to the property interest) but not in another (collection of the principal portion of the property interest; ie., the outstanding taxes themselves) is a mystery.

The Commonwealth in this case has avoided this inconsistency by asserting that it may also collect tax penalties via its reserved interest free of restrictions imposed by the Bankruptcy Code. According to the Department of Revenue's amended proof of claim, it seeks to collect $3,312.82 in penalties via its reserved property interest.

**12.** A dissent in one of the Ninth Circuit's early liquor license cases took precisely this position, indicating that it felt that the U.S. Supreme Court's decision in *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971),

should have operated in that case to nullify, in the bankruptcy context, California's retained property interest in a liquor license. *Professional Bar Co.*, 537 F.2d at 340–41. In *Perez*, the U.S. Supreme Court utilized the test set forth in *Davidowitz* to preempt an Arizona state drivers license statute that conflicted with the fresh start objective of the Bankruptcy Code. *Perez*, 402 U.S. at 656–58, 91 S.Ct. at 1715. The dissent in *Professional Bar Co.* stated that "[t]he result seems to me inconsistent with the thrust of *Perez v. Campbell* . . . since priority in distribution of the proceeds of the sale of the asset is here determined under state law in a manner inconsistent with the federal bankruptcy law priorities." *Professional Bar Co.*, 537 F.2d at 340–41.

**13.** As the trustee properly noted at the final hearing on this matter, "[i]t's not farfetched to envision a [s]tate [s]tatute which attempts to limit the owner's interest in a vehicle by a requirement . . . [that outstanding s]tate [t]axes be paid before renewal or registration, or sale[,] of the vehicle. . . . That would directly impact many cases in bankruptcy." Transcript of February 15, 1996 at 44.

bankruptcy law.[14]

■ Defendants, as well as the state sovereigns in the Sixth and Ninth Circuit cases, nevertheless cite two Supreme Court cases to support their assertion, *Hyde v. Woods,* 94 U.S. 523, 24 L.Ed. 264 (1877) and *Board of Trade of City of Chicago v. Johnson,* 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924). However, both of these cases dealt with lien-like property interests reserved to private entities rather than state sovereigns by way of statute. Such a reservation by a private entity, without more, cannot result in a Supremacy Clause conflict. However, such a reservation achieved by state action will result in a Supremacy Clause conflict. Therefore, *Hyde* and *Board of Trade of City of Chicago* are simply not pertinent to a state sovereign's reservation to itself of such a property interest.[15]

Finally, our decision comports with language in *In re Hoffman,* 65 B.R. 985 (D.R.I.1986) and *In re Aegean Fare, Inc.,* 35 B.R. 923 (Bankr.D.Mass.1983). *Hoffman* and *Aegean Fare* both dealt with statutory provisions similar to those involved in the decisions of the Sixth and Ninth Circuits. However, unlike the cases of the Sixth and Ninth Circuits, *Hoffman* and *Aegean Fare* did not involve disputes regarding the order of distribution of license sales proceeds. Rather, *Hoffman* and *Aegean Fare* considered—in the bankruptcy context—whether a state, pursuant to its statutorily reserved property interest, could appropriately disallow a transfer or renewal of a liquor license until the license holder (or estate/trustee) had paid its outstanding taxes.[16]

The *Hoffman* and *Aegean Fare* courts both held that a state could not disallow, in the context of a bankruptcy proceeding, the transfer or renewal of a liquor license as a means to collect outstanding taxes. *Hoffman,* 65 B.R. at 990, 993; *Aegean Fare,* 35 B.R. at 928. As support for their position (although not necessary to their decisions), both courts found that the statutory provisions at issue were "violative of the Supremacy Clause" because their effect was to "thwart or frustrate the aims of the federal Bankruptcy Code." *Hoffman,* 65 B.R. at 993; *Aegean Fare,* 35 B.R. at 928. This finding should not be impacted by the fact that the precise issue resolved by these two courts was different than that resolved in the Sixth and Ninth Circuit cases. Indeed, although the *Aegean Fare* court was careful to distinguish on the facts its decision from those in the Ninth Circuit, *id.* at note 4, it also stated that the "purpose and effect of the ... [statute that it construed was] *to frustrate[,* inter alia] *... the priorities provision of the Bankruptcy Code." Id.* (emphasis added). As well, the *Hoffman* court noted

---

**14.** That the defendants were actually attempting to create nothing more than a lien but at the same time avoid the consequences in bankruptcy of such a categorization is clear to this Court. The following exchange at the final hearing on this matter is indicative of the Commonwealth's difficulty in persuading this Court otherwise:

> The Court: They're not even saying it's a lien. They're not even saying it's a lien.
> [Molluso]: Well, we're saying that actually, it's a reserve[d] power *in the nature of a lien,* because the cases talk in that [those] terms, too, and they talk about different—*they call it different things,* and I think *in the nature of a lien* is probably the best way to state it, and we could also argue that its *perfected* as such, quote, ˙unquote, when the taxes become delinquent.
> The Court: But then you're not claiming an interest in the property. Now you're claiming a *liened* interest, but not an ownership interest.
> [Molluso]: Well, it's sort of—*the problem is, I agree, [it] is sort of a hazy concept. I mean, it's sort of ambiguous.* It's a—.

> The Court: Maybe we're going to un-haze it. That's ... the best you can do, is it's kind of a hazy kind of lien kind of maybe kind of—.
> Transcript of February 15, 1996 at 40 (emphasis added).

**15.** The bankruptcy court in *Kick–Off* dealt with this issue in the following manner:

> Such reasoning is an interesting exercise in metaphysics that has [only] a *superficial* appeal because the claimant [Massachusetts Department of Revenue] and the issuer [of the liquor license] *are both agencies of the state.* In view of this identity, a bankruptcy judge [in *Anchorage Int'l Inn,* 16 B.R. 308, 313 (Bankr.D.Ala. 1981), *rev'd on other grounds,* 718 F.2d 1446 (*9th Cir.*1983)] recogniz[ed] the apparent conflict with *Perez v. Campbell....*
> *Kick–Off,* 82 B.R. at 650 (emphasis added).

**16.** As mentioned above, this particular issue has been rendered moot in this case by defendants' consent to the unencumbered sale of the license by the trustee.

that the bankruptcy court below had determined that the statute at issue there "was . . . an impermissible derogation of the *Bankruptcy Code's priority provisions.*" *Hoffman,* 65 B.R. at 987 (emphasis added).

██ For all of the reasons above, we find that the Commonwealth's interpretation of its reserved "lien-like" property right under 47 Pa.S.A. § 4–477(d)(3) is in direct conflict with the priority and distribution provisions of the federal bankruptcy law. Therefore, this statutory provision is preempted to the extent that it operates in the manner put forth by the Commonwealth in a bankruptcy case. Such interest, if it is to receive any protection under the Bankruptcy Code, must qualify as a lien.[17]

### III. *Whether the Commonwealth's interest established pursuant to 47 Pa.S.A. § 4–477(d)(3) qualifies as a lien?*

An excellent analysis of this issue can be found in the bankruptcy court's opinion in *Kick–Off,* which dealt with a statute similar in every significant respect to the Commonwealth's statute in this case:

> [The state's debt collection statute] makes no use of the term "lien." This is in contrast with such statutes as the Massachusetts mechanics lien statutes which expressly state that liens are being authorized and provide procedures for their enforcement through sale. . . . *The right of sale and payment from the proceeds is the hallmark of any property interest which is designed to enforce payment of a debt* [e.g., a lien]. Perhaps the prime example is a security interest under the Uniform Commercial Code.
>
> We conclude that the Commissioner had no property interest in the license, and consequently has none in its proceeds. . . . The Commissioner had ample opportunity to obtain a lien by observing the filing

requirements of [Massachusetts' pertinent perfection statutes]. He has not done so. *Kick–Off,* 82 B.R. at 651 (emphasis added).

██ The *Kick–Off* court's analysis is directly on point with respect to this case for several reasons. First, the Commonwealth's reserved interest in this case is not referred to as a "lien" anywhere in 47 Pa.S.A. § 4–477(d)(3), nor in other related provisions of the Pennsylvania Liquor Code for that matter. This fact is significant because the Commonwealth, when it has wished to create a lien, has been clear in so doing; *see, e.g.,* 72 Pa.S.A. § 1401[18] (granting to the Commonwealth "a first lien" upon property of a taxpayer "from the date of settlement, assessment[,] or determination" of "[a]ll [s]tate taxes"). Secondly, the Commonwealth, by mere virtue of whatever interest it may have retained in the liquor license through its statute, does not have the right to sell the license and apply any proceeds towards satisfaction of outstanding state taxes. This is clearly evidenced not only by the plain language of the statute but also by admissions of the parties at the final hearing:

> [Reitmeyer]: Absent the right of the Trustee to sell the license, the State would have no right to collect its taxes by selling the license and applying the proceeds to satisfy the tax debt. The State desires the Code's aid in selling the license, but at the same time, wish[es] to avoid the Code's system for distributing the proceeds from that sale.
>
> . . . . .
>
> [Molluso]: We can also sell it. *But we have to use—we actually have to do it under a filed lien.* We could execute using the sheriff to do that.
>
> The Court: So you have to file a lien to do that?
>
> [Molluso]: It's a filed lien. However, we could revoke it by just having a citation issued by the State Police.

17. "It should be observed that any such lien[, if properly perfected,] would nevertheless be subject to the restrictions contained in 11 U.S.C. § 724." *Kick–Off,* 82 B.R. at 651 note 3.

18. Even though the Commonwealth's claims are not secured by a lien in the license, they are

secured by the lien granted pursuant to 72 Pa. S.A. § 1401. The ramifications of this lien are discussed earlier in this opinion at the end of the statement of facts and in the second paragraph of footnote 5.

The Court: You can revoke, *but you can't sell.* So, Ms. Reitmeyer's point is that if the license expires, you may never collect that tax. The only hope you have of collecting it is to—to allow it to be transferred and reissued subject to the payment of the tax.

[Molluso]: *Under the license itself. There's other ways to do it, but under the license. I mean, we can execute using as I said, a lien, but that's correct.* Transcript of February 15, 1996 at 42–43 (emphasis added).

Finally, by the Commonwealth's own admission set forth above, it could have undertaken to file a notice of, and then seek execution with respect to, its already existent lien on the liquor license granted pursuant to 72 Pa.S.A. § 1401.[19] This indicates to this Court that whatever interest the Commonwealth may have retained in the license did not itself also constitute a lien. For the Commonwealth to maintain otherwise would render redundant and, therefore pointless, the statutory lien already granted by 72 Pa. S.A. § 1401.

Therefore, this Court finds, at least in the context of a bankruptcy case, that the Commonwealth's retained interest in the license does not qualify as a lien. Because the Commonwealth's interest in the license is not a lien, it cannot, only on the basis of such interest, have any right to the proceeds from the sale thereof.

### IV. *Additional concerns raised by the Commonwealth's position.*

In response to an inquiry from this Court, the Commonwealth submitted a letter dated December 21, 1995, confirming that none of the taxes comprising the claims of the Commonwealth were directly related to the debt-or's sales of liquor to the public. This makes sense because Pennsylvania's state sales tax on liquor,[20] as well as its emergency liquor tax,[21] are collected by way of their imposition on purchasers such as the debtor (i.e., the tax is not collected from proceeds that the debtor would have received from liquor sales to his customers). The following statements elicited by this Court at the final hearing, although consistent with the aforementioned tax collection scheme, are nevertheless perplexing:

[Phillips]: We're not saying that the taxes that are owed by a business that happens to have a liquor license necessarily have any connection to the selling of liquor.

The Court: Okay. So, it's irrelevant that the taxes generated have anything to do with the sale of liquor?

[Phillips]: Yes.

. . . . .

[Molluso]: Let me explain. You have a question about the history of the legislation, it sounds like. I have some personal involvement in that. I'll give you the history of why that was done. What had happened quite candidly, is back in I guess, 1980, when we came into office, okay, we saw that a lot of restaurants who had liquor licenses owed the State, each of them, hundreds of thousands of dollars of taxes. And we threw it around and it became obvious that here was the State, like the king, giving somebody a license to do something and they were abusing it. So, we decided we should do something about that. We shouldn't let that go on.

So, the first thing we did was to write an Attorney General's opinion, and what

---

19. Pursuant to 72 Pa.S.A. § 1404, the Department of Revenue could have filed in the appropriate locations copies of the lien granted it under 72 Pa.S.A. § 1401, and then proceeded to obtain a judgment and execution thereon. This procedure could have been pursued at any time while taxes of the debtor remained outstanding.

20. The debtor's sales of liquor to its customers would not have been subject to the state sales tax per 72 P.S. § 7201(k)(10). Rather, this section provides that the sales tax would have been im-posed on the debtor's purchases of liquor from the PLCB. Pursuant to 72 P.S. § 7202(a), the PLCB collects this tax from its purchasers at the time of such sales.

21. This tax, although different in rate, is similar to the state sales tax in that it is also imposed on purchases of liquor from the PLCB. 47 P.S. § 795. Pursuant to 47 P.S. § 796, the PLCB also collects this tax at the time of sale to purchasers such as the debtor.

we had wanted to do quite candidly, was to give the State a superior right over other creditors. Transcript of February 15, 1996 at 29–30.

.　　.　　.　　.　　.

[Phillips]: *[W]e're not saying this is an exercise of the [Commonwealth's] police power. Admittedly, this is [to] collect taxes.* But we also say that it's a liquor license. It's not a house or a car. Transcript of February 15, 1996 at 37 (emphasis added).

■ These statements raise the additional question of whether the Commonwealth's use as a general tax collection measure of 47 Pa.S.A. § 4–477(d)(3), placed as it is in a *police power* codified statute (the Commonwealth's liquor code), violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. The Due Process Clause "demands ... that [a] law shall not be unreasonable, arbitrary, or capricious, and *that the means selected shall have a real and substantial relation to the object sought to be attained." Nebbia v. New York,* 291 U.S. 502, 525, 54 S.Ct. 505, 510–11, 78 L.Ed. 940 (1934) (emphasis added). Due process seems to demand that 47 Pa.S.A. § 4–477(d)(3), because it comprises part of the Commonwealth's liquor code, must have a real and substantial relation to the Commonwealth's regulation of liquor. Although defendants are correct in generally asserting that a state has greater leeway in its regulation of liquor, we are not convinced that a general revenue collection procedure—or the use of another statutory provision as such—has a real and substantial relation to a state's regulation of liquor.[22] However, this Court need not answer this broader question concerning due process because 47 Pa.S.A. § 4–477(d)(3), as it presently is interpreted by defendants, is preempted by the Bankruptcy Code. Therefore, we will not address the merits of this statutory provision in any context other than bankruptcy.

### CONCLUSION

Defendants' reserved lien-like property interest in a liquor license is preempted to the extent that they assert its applicability in a bankruptcy case because their interpretation of such interest conflicts with the priority provisions of the Bankruptcy Code. Additionally, defendants' property interest cannot be afforded any protection under the distribution provisions of the Bankruptcy Code because 47 Pa.S.A. § 4–477(d)(3) may not be construed, at least in a bankruptcy setting, as granting to defendants a lien on a liquor license. Therefore, the proceeds from the sale of the debtor's liquor license in this case should be turned over to plaintiff for distribution by her consistent with both this opinion and the provisions of the Bankruptcy Code.

Accordingly, plaintiff's motion for summary judgment will be GRANTED and the corresponding motion of defendants DENIED.

---

22. In this regard, see also our discussion in footnote 4 of this opinion.