IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kirpal Whalla, : 
                Appellant : 
  :
        v. : No. 240 C.D. 2017
  : Argued: November 13, 2017
Pennsylvania Liquor Control Board : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT               FILED: January 4, 2018

Kirpal Whalla (Applicant) appeals an order of the Court of Common Pleas of Erie County (trial court) affirming the decision of the Pennsylvania Liquor Control Board not to validate or renew the restaurant liquor license that he purchased at an Internal Revenue Service (IRS) tax sale. Applicant contends that he bought the liquor license free and clear of all liens and, thus, the trial court's decision violated the Supremacy Clause of the United States Constitution.[1] We affirm.

Mortrapp, Inc. holds Liquor License No. R-7484, for premises located at 1314 Griswold Plaza, Erie, Pennsylvania. The liquor license was seized by the IRS and offered for sale at public auction on May 2, 2012. On that date, "the right, title, and interest of Mortrapp Inc" in the liquor license was sold to Applicant for $20,600. Public Auction Sale, Reproduced Record at 19 (R.R. __).

---

[1] It provides in relevant part:

> This Constitution, and the Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. CONST. art. VI, §1, cl. 2.

A restaurant liquor license must be renewed every two years, and the Liquor Control Board must validate the license for each year of the license period. Section 102 of the Liquor Code,[2] 47 P.S. §1-102 (defining "License period"). On July 5, 2013, Applicant, on behalf of Mortrapp, filed two applications with the Liquor Control Board's Bureau of Licensing (Bureau). The first requested a retroactive renewal of the liquor license for the period August 1, 2011, through July 31, 2013. The second requested a retroactive validation of the license for the period August 1, 2012, through July 31, 2013. On July 26, 2013, Applicant filed a third application, requesting a renewal of the liquor license for the licensing period effective August 1, 2013, through July 31, 2015.

The Bureau filed objections to the three applications. First, it contended that all three applications were untimely. Second, it noted that the applications did not include verifications from either the Department of Revenue or the Department of Labor and Industry that all state taxes had been paid. To the contrary, both departments issued reports that the tax status of the license was "NOT CLEAR." R.R. 70, 72-73. Applicant was advised as follows:

> The Liquor Control Board HAS NO AUTHORITY to remedy any dispute over a failure to issue a tax clearance by either the Department of Revenue or the Department of Labor and Industry, or both. This is a matter strictly between you, the licensee, and the taxing authority. Do not assume that payment of all taxes constitutes clearance. Renewal of your license by the Liquor Control Board requires notification from the taxing agency(s) to the Liquor Control Board.

R.R. 69 (emphasis in original).

---

[2] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§1-101 – 10-1001.

Applicant appealed, and the Board appointed a hearing examiner, who conducted a hearing on January 22, 2014. Neither Applicant nor the Bureau presented evidence. The record consisted of the three applications for renewal and/or validation of the liquor license; the Bureau's objections thereto; and the hearing notice.

At the hearing, Applicant gave an "opening statement." Notes of Testimony, 1/22/2014, at 6 (N.T. ___); R.R. 55. By counsel, Applicant stated that he learned "he could not transfer this license [or] take any steps to the license transfer without a location." *Id.* at 7; R.R. 56. Further, the liquor license remains in the possession of the IRS. Applicant filed the applications to keep the license alive until these details could be resolved. In the meantime, the license identifies the licensee as Mortrapp. Applicant maintained that he does not have physical control of, or access to, Mortrapp's records. Applicant argued that Mortrapp's unpaid state tax obligations, if any, are not his responsibility.

The hearing examiner issued a recommended adjudication that the three applications be denied. The Board agreed and adopted the recommendation. The Board held that Applicant's applications were untimely by reason of Section 470(a) of the Liquor Code, 47 P.S. §4-470(a). In addition, the applications did not include the mandatory tax clearance from either the Department of Revenue or Department of Labor and Industry.

Section 470(a) of the Liquor Code sets forth the procedures for validation or renewal of a liquor license. It states as follows:

> *All applications for validation or renewal of licenses under the provisions of this article shall be filed with tax clearance from the Department of Revenue and the Department of Labor and Industry and requisite license and filing fees*, and shall include an application surcharge of seven hundred dollars ($700.00), *at*

3

*least sixty days before the expiration date of same*: Provided, however, That *the board, in its discretion, may accept nunc pro tunc a renewal application filed less than sixty days before the expiration date of the license with the required fees, upon reasonable cause shown and the payment of an additional filing fee of one hundred dollars ($100.00) for late filing*: And provided further, That except where the failure to file a renewal application on or before the expiration date has created a license quota vacancy after said expiration date which has been filled by the issuance of a new license, after such expiration date, but before the board has received a renewal application *nunc pro tunc* within the time prescribed herein *the board, in its discretion, may, after hearing, accept a renewal application filed within two years after the expiration date of the license with the required fees upon the payment of an additional filing fee of two hundred fifty dollars ($250.00) for late filing*. Where any such renewal application is filed less than sixty days before the expiration date, or subsequent to the expiration date, no license shall issue upon the filing of the renewal application until the matter is finally determined by the board and if an appeal is taken from the board's action the courts shall not order the issuance of the renewal license until final determination of the matter by the courts. The board may enter into an agreement with the applicant concerning additional restrictions on the license in question. If the board and the applicant enter into such an agreement, such agreement shall be binding on the applicant. Failure by the applicant to adhere to the agreement will be sufficient cause to form the basis for a citation under section 471 and for the nonrenewal of the license under this section. *A renewal application will not be considered filed unless accompanied by the requisite filing and license fees and any additional filing fee required by this section ….*

47 P.S. §4-470(a) (emphasis added). Applicant did not satisfy any of these requirements.

Because the liquor license expired on August 1, 2011, the renewal application had to be filed no later than June 2, 2011. Instead, Applicant filed it on

4

July 5, 2013. Even if the license had been renewed as of August 1, 2011, it needed to be validated as of August 1, 2012, and the validation application had to be filed by June 4, 2012. Instead, Applicant filed it on July 5, 2013. Had the license been renewed in 2011, for the two-year renewal period, Applicant had to file the renewal application by June 3, 2013. Instead, Applicant filed it on July 26, 2013.

The Board acknowledged that Section 470(a) of the Liquor Code permits *nunc pro tunc* review of a late-filed application if there exists a reasonable cause for the delay and a late-filing fee paid. However, Applicant did not offer any explanation for waiting until 2013 to submit the renewal and validation applications. Further, he did not submit the requisite late-filing fee.

The Board further explained that Section 470(a) of the Liquor Code requires that "[a]ll applications for validation or renewal of licenses under the provisions of this article *shall be* filed with tax clearance from the Department of Revenue and the Department of Labor and Industry and requisite license and filing fees[.]" 47 P.S. §4-470(a) (emphasis added). The requirements for a tax clearance application are set forth in Section 477 of the Liquor Code, which states:

> (a) *An applicant for the grant, renewal or transfer of any license issued pursuant to this article shall provide to the board, upon forms approved by the Department of Revenue, the following*:
>
>> (1) the applicant's State personal income tax identification number;
>>
>> (2) the applicant's State sales tax number;
>>
>> (3) the applicant's State corporation tax number;
>>
>> (4) the applicant's State employer withholding tax number;

5

(5)  the applicant's unemployment compensation account number; and

(6)  *a statement that*:

>  (i)  *all State tax reports have been filed and all State taxes paid*;

>  (ii)  *all State taxes are subject to a timely administrative or judicial appeal; or*

>  (iii) *all State taxes are subject to a duly approved deferred payment plan*.

***

(d)  *The board shall not approve any application for the grant, renewal or transfer of any license issued pursuant to this article where the applicant has failed to*:

>  (1)  *provide any of the information required by subsection (a)*;

>  (2)  *file required State tax reports; or*

>  (3)  *pay any State taxes not subject to a timely administrative or judicial appeal or subject to a duly authorized deferred payment plan*.

(e)  For the purpose of this section, the term "applicant" shall include the transferor and transferee of any license issued under this act.

(f)  *Upon the required submission of the annual licensing fee or upon renewal, issuance or transfer of any license, if the Department of Revenue or the Department of Labor and Industry notifies the board of noncompliance with the aforementioned provisions, the board shall not renew, issue, transfer or validate the license*.  Any appeal filed therefrom shall not act as a supersedeas.

* * *

47 P.S. §4-477 (emphasis added).[3]   The Board emphasized that it lacked the authority to approve an application for license renewal where the applicant has failed to comply with Sections 470(a) and 477 of the Liquor Code.  Accordingly, it denied all three applications.

Applicant appealed to the trial court.  The trial court scheduled a *de novo* hearing, but the parties submitted a stipulation of facts in lieu of an evidentiary hearing.  The stipulation established that Applicant purchased the liquor license on May 2, 2012, from the IRS and filed the applications for renewal and validation in 2013.  Applicant has no connection to Mortrapp, and his authority to act on behalf of Mortrapp was limited to the liquor license.  Stipulation, ¶6; R.R. 14.  The stipulation further specified:

> 9.   Mortrapp's renewal application for the licensing period effective August 1, 2011, section 10 is annotated "NOT CLEAR" as to the Department of Revenue tax status and "NOT CLEAR" as to the Department of Labor and Industry tax status.
>
> 10.  Mortrapp's validation application for the licensing period effective August 1, 2012, section 10, is annotated "NOT CLEAR" as to the Department of Revenue tax status and "NOT CLEAR" as to the Department of Labor and Industry tax status.
>
> 11.  Mortrapp's renewal application for the licensing period effective August 1, 2013, section 10, is annotated "NOT CLEAR" as to the Department of Revenue tax status and "NOT CLEAR" as to the Department of Labor and Industry tax status.

Stipulation ¶9-11; R.R. 15.

The trial court affirmed the Board, holding that its decision comported with the Liquor Code.  The three applications were untimely.  The Board may accept

---

[3] Section 477 of the Liquor Code was added by the Act of June 29, 1987, P.L. 32.

7

a *nunc pro tunc* renewal application, but only where the licensee presents reasonable cause for the delay in filing and includes the late-filing fee. Applicant did neither. The parties stipulated that Applicant did not obtain the necessary tax clearances, and Section 477(d) of the Liquor Code prohibits the Board from acting on an application that does not have the necessary tax clearances.

The trial court next addressed Applicant's argument that Section 477(d) conflicts with federal law and is, thus, preempted. Applicant argued that Section 6339(c) of the Internal Revenue Code, 26 U.S.C. §6339(c),[4] released the license he purchased from all encumbrances, including Mortrapp's state tax debts. In support, Applicant cited a federal bankruptcy case, *In re Pompeo*, 195 B.R. 43 (W.D. Pa. 1996). He also cited an unreported federal foreclosure action, *United States v. R & E Corporation*, No. 98-1068, 1999 WL 680376 (E.D. Pa. August 31, 1999).

In *Pompeo*, the Liquor Control Board, the Department of Revenue and the Department of Labor and Industry argued that they had priority over other lienholders to the proceeds of the sale of a liquor license. They argued that Section 477(d)(3) of the Liquor Code forbids the transfer of a liquor license until the delinquent state taxes are paid. The bankruptcy court disagreed, holding that "defendants' property interest cannot be afforded any protection under the distribution provisions of the Bankruptcy Code [11 U.S.C. §§101-1330] because 47

---

[4] It provides:

> Effect of junior encumbrances.--A certificate of sale of personal property given or a deed to real property executed pursuant to section 6338 [relating to a certificate of sale or deed to real property] shall discharge such property from all liens, encumbrances, and titles over which the lien of the United States with respect to which the levy was made had priority.

26 U.S.C. §6339(c).

[P.S.] §4-477(d)(3) may not be construed, at least in a bankruptcy setting, as granting to defendants a lien on a liquor license." *Pompeo*, 195 B.R. at 54.

In *R & E*, the central issue was the priority of a federal lien on the proceeds of the sale of a liquor license in a foreclosure action. The IRS argued its tax liens had priority over all but one of the tax liens of Pennsylvania's Bureau of Employer Tax Operations based on the dates the respective liens were recorded. The District Court agreed, and this gave the IRS a priority to the sale proceeds.

The trial court distinguished both *Pompeo* and *R & E*. It concluded that neither case had any application to a licensee's obligation to obtain state tax clearances when seeking renewal or validation of a liquor license. Rather, they dealt with the distribution of the monies generated by the sale of a liquor license in a private party transaction. Here, the liquor license has not been transferred. It is still in the name of Mortrapp.

Applicant has appealed to this Court.[5] He argues that the Supremacy Clause prohibits the Board's actions. He contends that the IRS's sale of Mortrapp's liquor license divested all liens for unpaid taxes to the Commonwealth, making the tax clearance an irrelevant exercise.

The trial court held that Applicant's applications for a license renewal and validation were untimely filed. This alone warranted the Board's refusal to grant the applications. The Board points out that Applicant did not appeal this determination of the trial court.

Section 470(a) of the Liquor Code states that the Board

---

[5] Pursuant to Section 464 of the Liquor Code the trial court is required to review the evidence *de novo*. 47 P.S. §4-464. Thus, this Court's review is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court committed an error of law or an abuse of discretion. *Goodfellas, Inc. v. Pennsylvania Liquor Control Board*, 921 A.2d 559, 564 n.8 (Pa. Cmwlth. 2008).

in its discretion, may accept *nunc pro tunc* a renewal application filed less than sixty days before the expiration date of the license with the required fees, upon reasonable cause shown and the payment of an additional filing fee of one hundred dollars ($100.00) for late filing[.]

47 P.S. §4-470(a) (emphasis added). The Board also may consider a "renewal application *nunc pro tunc*" filed "within two years after the expiration date of the license" upon payment of $250 for the late filing. *Id*. *Nunc pro tunc* relief may not be granted "absent a showing that extraordinary circumstances involving fraud or its equivalent, duress, or coercion *caused the delay in filing an appeal*." *Arena Beverage Corporation v. Pennsylvania Liquor Control Board*, 97 A.3d 444, 449 (Pa. Cmwlth. 2014) (quoting *In re Borough of Riegelsville from Bucks County Board of Assessment and Revision of Taxes*, 979 A.2d 399, 402 (Pa. Cmwlth. 2009)).

Applicant has not offered any reason for his delay in filing the applications, let alone one that rises to the level of an extraordinary circumstance. Nor did he pay the late filing fee. Section 470(a) specifies that a "renewal application will not be considered filed unless accompanied by the requisite filing and license fees and any additional filing fee required by this section." 47 P.S. §4-470(a).[6]

Because the applications were untimely, we need not address Applicant's claims that the Liquor Code provisions requiring tax clearances from the Department of Revenue and Department of Labor and Industry are preempted by the Supremacy Clause.

---

[6] Additionally, the Board does not grant tax clearances. Its statutory obligation is to require applicants for validation or renewal of liquor licenses to file tax clearances from the Department of Revenue and the Department of Labor and Industry. 47 P.S. §4-470. Any issue Applicant had regarding tax clearances should have been addressed to those departments.

10

In any event, the record is inadequate to consider Applicant's constitutional claims. Applicant argues that the "NOT CLEAR" report relates to taxes unpaid by Mortrapp prior to Applicant's May 2, 2012, purchase of the liquor license. However, the stipulation of facts does not support this supposition. Indeed, none of the applications at issue here relate to renewal or validation periods during which Mortrapp was the sole owner. The first application seeks a license renewal for the period 2011 through July 31, 2013; the second application seeks a license validation from 2012 through July 31, 2013; and the third application seeks renewal from 2013 through July 31, 2015. Absent evidence that the denial of the tax clearance related to taxes pre-dating Applicant's 2012 purchase, this Court cannot address the preemption claim.

As explained above, Applicant did not appeal the trial court's holding that the applications for renewal and validation were untimely filed, which is fatal. Accordingly, the order of the Board is affirmed.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kirpal Whalla,                        :
                 Appellant             :
                                     :
              v.                      :       No. 240 C.D. 2017
                                       :
Pennsylvania Liquor Control Board     :

# **O R D E R**

AND NOW, this 4th day of January, 2018, the order of the Court of Common Pleas of Erie County dated January 23, 2017, in the above-captioned matter is AFFIRMED.

                                     _____
                                     MARY HANNAH LEAVITT, President Judge