**In re Danny and Debra JOHNSON, Debtors.**

**Bankruptcy No. 91–10200.**

United States Bankruptcy Court, D. Rhode Island.

March 5, 1992.

James T. Marasco, Providence, R.I., for debtors.

Seth Adam Perlmutter, Cranston, R.I., for Providence Inn Group.

Marc D. Wallick, Warwick, R.I., Chapter 7 Trustee.

DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on October 17 and 23, 1991 on the Court's Order to Show Cause why Providence Inn Group (Marriott), a creditor in this case, should not be held in contempt for violation of the automatic stay. 11 U.S.C. § 362(h).

## BACKGROUND

On November 9, 1990, the Johnsons' home was heavily damaged by fire. Before long, Neil Bromley, a public adjuster, was on the scene handling the Johnsons' insurance claim. In that capacity he made arrangements for them to live at the Marriott Residence Inn during the repairs. It was the original understanding of all of the parties that the Johnsons' homeowner's insurance would cover the cost of temporary lodging, that Bromley would obtain the insurance proceeds from the fire insurance carrier, and that he would pay the Marriott's franchise owner, Providence Inn Group, from those proceeds.

On or about December 26, 1990, the repairs to their home still incomplete, and becoming increasingly dissatisfied with Bromley's handling of their claim, the Johnsons vacated the Marriott, leaving unpaid charges of $5,602.71, and went to live with relatives.

On January 29, 1991, the Johnsons filed the instant Chapter 7 case.

On March 5, 1991, without notice to the Debtors or their counsel, the Marriott sought and obtained an assignment of the Debtors' temporary lodging claim.[1]

On May 10, 1991, the Debtors amended their schedules to add a number of previously unlisted creditors, including Bromley and the Marriott.

On July 3, 1991, the Marriott filed a motion for relief from the automatic stay, based upon the post-petition assignment. After a hearing on July 30, 1991, the matter was taken under advisement, and upon review of the record and the supplemental memoranda, we entered an Order on September 26, 1991, denying the motion for relief from stay, and scheduled the instant show cause hearing on the stay violation issue.

## DISCUSSION

██ The Marriott's arguments are neither relevant to nor supportive of its position.[2] The central issue remains unchanged, i.e.—is the post-petition affirmative act of seeking out and obtaining the assignment a "willful violation" of the automatic stay? 11 U.S.C. § 362(h). If the answer is yes, then actual damages, costs and attorneys' fees, and punitive damages may be appropriate. Id.

██ At the outset, it is clear that the insurance proceeds in question are property of the estate. The Marriott's argument to the contrary is rejected, as it is totally without merit. See 11 U.S.C. § 541(a)(6); Woods v. John Fox Oldsmobile, Inc. (In re Woods), 97 B.R. 850, 851 (Bankr.W.D.Va. 1989); In re Island Helicopter Corp., 63 B.R. 515, 522 (Bankr.E.D.N.Y.1986). The United States Court of Appeals for the First Circuit has given an expansive reading to "property of the estate." See Lonstein v. Rockman (In re Lonstein), 950 F.2d 77, 79 (1st Cir.1991) (Debtor's interest in undistributed testamentary bequest); In re Gull Air, Inc., 890 F.2d 1255 (1st Cir. 1989) (air carrier landing slots); see also Pub Dennis of Mineral Spring Ave., Inc. v. Town of North Providence (In re Pub

1. The assignment provided that "[w]e the insured, authorize the insurance company, Providence Mutual and Casualty, to pay Marriott Residence Inn Warwick directly for charges incurred during our temporary relocation." Plaintiffs' Exhibit A.

2. The Marriott argues (unpersuasively) that when it learned of the filing of Debtors' petition, it reviewed the schedules and upon seeing that Marriott was not included as a creditor, it was therefore reasonable to assume that the Debtors were not attempting to discharge their debt to the Marriott. As a result, the automatic stay was not in effect as to that particular debt. Counsel is a regular practitioner before this Court, and based on his level of expertise, is charged with the knowledge that this is not a bona fide argument.

We also reject Mr. Perlmutter's alternative argument which is predicated on the Rhode Island "Innkeeper's Lien." That statute is clearly not applicable in this matter. R.I. Gen. Laws § 34–33–1 (1984 Reenactment) (granting innkeepers to whom lodging charges are due, a lien upon the baggage and chattel of the debtor-guest).

. Because of our ultimate disposition herein at page 5, we need not address the assessment of Fed.R.Bankr.P. 9011 sanctions for presenting arguments patently without merit. See Anderson v. McGowan (In re Anderson), 128 B.R. 850 (D.R.I.1991).

*Dennis of Mineral Spring Ave., Inc.)*, 126 B.R. 903 (Bankr.D.R.I.1991) (Debtor's liquor license). The automatic stay is intended to protect all property of the estate from the unauthorized collection efforts of individual creditors, with certain limited exclusions not pertinent here. Based upon the evidence, we find that the Marriott's unauthorized post-petition action to obtain the assignment was an intentional violation of § 362(a).

 The willfulness of the violation needs to be viewed in light of the Marriott's agents' awareness of the Debtors' having filed "some kind of bankruptcy" by March of 1991. Michael Seidenberg, Marriott's manager, testified that as far back as December, 1990, he was aware of the "imminent possibility of the Debtors filing for bankruptcy protection," and that he had been told by Danny Johnson on at least three occasions, in February and March, 1991, that the Johnsons had in fact filed for bankruptcy. But based on his testimony (which is vague and unreliable on this issue) it is difficult to establish precisely what he knew at that time. Despite Mr. Seidenberg's vacillations,[3] based upon the entire record, we conclude that at the time Mr. Seidenberg was seeking and obtaining an assignment of insurance proceeds, both he and Marriott's counsel were fully aware of the Debtors' pending bankruptcy case.

 "Willfulness," in the context of § 362(h), is established if the respondent was aware of the stay, and if its post-petition actions were intentional. *See Goichman v. Bloom (In re Bloom)*, 875 F.2d 224 (9th Cir.1989); *In re Newport Offshore, Ltd.*, 88 B.R. 566, 570 (Bankr. D.R.I.1988). Costs and punitive damages are appropriate where the violation is willfully committed.[4] *See AP Indus., Inc. v. SN Phelps Co. (In re AP Indus., Inc.)*, 117 B.R. 789 (Bankr.S.D.N.Y.1990); *Uecker v. Davidson (In re Bair Island Marina &*

*Office Ctr.)*, 116 B.R. 180, 185 (Bankr. N.D.Cal.1990).

This is not a case of an uneducated or illiterate creditor unwittingly running afoul of an unfamiliar or complex Federal statute. On the facts before us, we find that the respondent's (agent's) knowledge of the pending bankruptcy, and its subsequent post-petition, extra-judicial attempts to recover said insurance proceeds by doing an end run around Debtors' attorney, are indeed willful and intentional violations of the automatic stay.

Accordingly, Providence Inn Group (Marriott) is ORDERED to pay $1,000 to their attorney, and $500 to the Debtors.

Enter Judgment consistent with this opinion.

---

**3.** When asked whether he was aware of the Debtors' having filed their bankruptcy petition on March 3, 1991, Mr. Seidenberg at first stated that he did not know, and then conceded that he "did know" in February.

**4.** The imposition of punitive damages is authorized under § 362(h), and is not otherwise proscribed by the limitations on this Court's civil contempt authority. *See In re Microbiological Sciences, Inc.*, C.A. No. 91–0341 P, slip op. at 6 (D.R.I. Oct. 8, 1991).