Michel D. SHADDUCK and Andrea
D. Shadduck, Plaintiffs,

v.

Stephen M. RODOLAKIS,
Trustee, Defendant.

Civ.A. Nos. 97–40182 WGY, 97–40199
WGY, 97–40200 WGY.

United States District Court,
D. Massachusetts.

June 12, 1998.

Michael D. Shadduck, Fort Dix, NJ, pro se.

Carl D. Aframe, Law Office of Carl D. Aframe, Worcester, MA, Mark S. Foss, Peters, Barnhill, & Rodolakis, Worcester, MA, for appellee.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

> The Judiciary's ability to operate effectively at significantly less than full staffing and avoid ... added personnel costs is a direct result of the many national and local innovations pursued aggressively in recent years and represents a significant contribution to the government's cost-cutting campaign. Many of these innovations are in automation technology....

Leonidas Ralph Mecham, Administrative Office of the United States Courts, *Report to Congress on the Optimal Utilization of Judicial Resources* 11 (Jan.1998).

> The Judiciary offered a new Public Access to Court Electronic Records (PACER) service in fiscal year 1997 to allow users to identify all cases throughout the country in which a particular party is involved. In recent surveys and focus groups, users identified this time-saving feature as a top priority. Another planned PACER upgrade will allow real-time access to a bankruptcy court's entire database 24 hours a day. The public will have access to case information moments after it is docketed.

*Id.* at 20.

What's more, PACER is a moneymaker.

> Pacer—The 1997 Year End Report for Massachusetts PACER usage shows a steady increase in minutes on-line for PACER users. The average time per month for the 3rd and 4th quarters was 133 hours worth of usage. In the 1st and 2nd quarters the average was 118 hours per month. Therefore, revenue increased 12% in the second half of the year. The fourth quarter of 1997 brought in $14,453.00 from District of Massachusetts usage. We will start advertising the toll-free 888 number as we anticipate PACER's move to the new waterfront courthouse.

Tony Anastas, United States District Court, District of Massachusetts, *Clerk's Report to the Court* (April 7, 1998) unnumbered page 2.

Ah, isn't technology wonderful?

What happens, though, if an overworked bankruptcy clerk makes an erroneous entry on the docket or omits to enter a court order; or, as happened here, an apparently overworked IRS employee simply fails to read the entire docket as PACER presents it to him?

These cases come before this Court on the appeal of the Defendant–Appellant Michael D. Shadduck ("Shadduck") from the orders of the Bankruptcy Court 1) denying Shadduck's motion for contempt against the Internal Revenue Service ("IRS") for violation of the automatic stay; 2) granting the IRS retroactive relief from the automatic stay; and 3) granting the IRS prospective relief from the automatic stay. In response, the Internal Revenue Service avers that this case is moot due to the Bankruptcy Court's denial of discharge on October 23, 1997. If not moot, the IRS asserts that there was no willful violation of the automatic stay as the IRS believed the bankruptcy had been discharged—a belief the IRS attributes to an allegedly incorrect discharge date on the cover sheet of the computer docket for the Shadduck bankruptcy case. Also, the IRS

maintains that Shadduck suffered no actual damages because of this violation.

For the reasons stated herein, this Court determines that 1) Shadduck's claims for declaratory and injunctive relief are moot; 2) Shadduck's damage claim is justiciable; and 3) the IRS's assessment of tax liability, filing of a notice of federal tax lien, and levying on Shadduck's IRA account constitutes a willful violation of the automatic stay entitling Shadduck to actual damages.[1] This case is remanded to the Bankruptcy Court to determine Shadduck's reasonable costs and attorneys' fees in bringing his motion for contempt.

## INTRODUCTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a). In reviewing the decision of the Bankruptcy Court on appeal, a district court shall not set aside findings of fact unless clearly erroneous, Fed. R.Bank.P. 8013; all conclusions of law, however, are subject to de novo review. *La-Roche v. Amoskeag Bank*, 969 F.2d 1299, 1301 (1st Cir.1992). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

## BACKGROUND

Shadduck and his wife, Andrea D. Shadduck, voluntarily filed a Chapter 11 petition in bankruptcy on June 4, 1993. *See In Re Shadduck*, No. 93–41551–JFQ, Docket Entry No. 1 (Bankr.D.Mass. Jun. 4, 1993).[2] The bankruptcy was converted to a Chapter 7 by order of the Bankruptcy Court after a hearing on February 16, 1994. *See* Docket Entry No. 32. The Bankruptcy Court appointed Stephen M. Rodolakis ("Rodolakis") as Trustee. On March 14, 1994, the Shadducks filed a motion to stay proceedings. The Bankruptcy Court denied this motion and extended to December 31, 1994 the time in which any party in interest could object to discharge under 11 U.S.C. § 727 or to the dischargeability of any claim under 11 U.S.C. § 523. *See* Docket Entry No. 54. Despite this extension, an order discharging the Shadducks was entered by the Bankruptcy Court on May 18, 1994. *See* Docket Entry No. 57. On May 26, 1994, in an attempt to rectify this error, Rodolakis filed a motion entitled "Motion of Stephen M. Rodolakis, Chapter 7 Trustee, to Revoke Discharge of Debtors Pursuant to Fed.R.Civ.P. Rule 60(a)." *See* Docket Entry No. 59. Three weeks later, on June 17, 1994, the Bankruptcy Court granted Rodolakis' motion. *See* Docket Entry dated Jun. 17, 1994. The IRS was not given formal notice of the motion to

---

**1.** The IRS has filed a Motion to Affirm the Bankruptcy Court's Denial of the Appellant's Motion or, in the alternative, for Rehearing. This motion is procedurally defective as stated. First, neither the Federal Rules of Civil Procedure nor the Federal Rules of Bankruptcy Procedure establish a procedure for affirmance by motion. Second, a motion for rehearing is premature, as this Court has not entered a judgment as to Shadduck's appeal. Pursuant to Fed.R.Bankr.P. 8015, a motion for rehearing is to be filed, if at all, "within 10 days after entry of the judgment of the district court...." As the memorandum that accompanies this motion is most properly characterized as a surreply memorandum, this Court construes the IRS motion as a motion to file a surreply. As construed, this motion is allowed.

In its memorandum, the IRS claims that "the late service of [Shadduck's] reply brief was prejudicial to the United States' ability to present oral argument." Mem.Supp. U.S. Mot. Affirm Bankr. Ct. at 3. The IRS states that the reply brief was mailed and received *after* the date set by this

Court's briefing schedule and, because IRS counsel in this matter was out of town when the brief arrived on January 26, 1998, the IRS did not have an opportunity to review it in preparation for oral argument on January 27, 1998. This Court concludes that there was no prejudice to the IRS, as this Court neither had Shadduck's reply brief in its chambers nor reviewed it prior to oral argument. In rendering its decision on this matter, this Court has considered only the record on appeal as designated by the parties pursuant to Fed.R.Bankr.P. 8006, the notices of appeal, and the bankruptcy court's findings of fact and conclusions of law as contained in the transcript of the Bankruptcy Court proceeding in this matter. *See* Fed.R.Bankr.P. 8006. Those parts of Shadduck's Reply Brief containing documents not part of the record of appeal were not considered by this Court in rendering its opinion.

**2.** Documents in the bankruptcy case will be referred to by docket number and date.

vacate the discharge order or the order vacating the discharge order, and apparently did not receive any notice of the discharge order in the first instance. However, "an employee of the Internal Revenue Service received informal, oral notice of the granting of the motion [vacating the discharge] from the Trustee's office on August 9, 1994." United States' Opp'n Mot. Debtor for Order Holding IRS in Contempt, Decl. of Marsha Warner, Ex. 1. This oral notification was recorded in the investigation history notes by the employee. *Id.*

On January 26, 1995, the IRS filed a withdrawal of its claim for Internal Revenue taxes dated May 6, 1994, regarding prepetition liability for the 1991 and 1992 tax years.[3]

On December 3, 1996, James Connell, the IRS Revenue Officer responsible for Shadduck's case, spoke with Mark Foss, the attorney for the Trustee. Following this conversation, Connell spoke with Mike Dubicki, Massachusetts special procedures staff bankruptcy advisor for the IRS. Connell made the following entry in the investigative history log regarding these telephone conversations.

> He [Foss] says that the judge has indicated that he will probably rule the IRA [Shadduck's Individual Retirement Account] is post-petition. Foss says that if that happens TP [taxpayer] will undoubtly remove and hide the money immediately. He will call when the judge rules.

> Called Mike Dubicki, Mass. SPS [Special Procedures Staff] bankruptcy advisor ... Discussed filing a motion for a lift of stay on the IRA. Faxed information to him. He will see counsel tomorrow.

Dubicki checked PACER to ascertain the status of Shadduck's case, but read only the cover sheet of the computer bankruptcy docket as it appeared on the PACER screen. This portion of the docket listed the discharge date of May 18, 1994. He went no

further. He thus failed to note the revocation of the discharge on June 17, 1994. On December 4, 1996, Dubicki erroneously—but in complete good faith—informed Connell that a bankruptcy discharge had been granted on May 18, 1994. As a result of this information, Connell issued a notice of levy to the Enterprise Bank & Trust Company ("the Bank") in Lowell, Massachusetts on or about December 4, 1994. This notice of levy sought to attach Shadduck's IRA account. The levy was issued for unpaid federal income taxes and penalties for 1992 totaling $56,947.41. Connell also filed a federal tax lien in the Orange County Clerk's Office, Goshen, New York on December 5, 1996.[4]

In a letter dated December 16, 1996, Shadduck informed the IRS that his bankruptcy was still pending and that, therefore, the tax lien was a violation of the automatic stay. The letter asserted that a jeopardy assessment made by the IRS for 1994 and 1995 tax years was also a violation of the automatic stay. He requested that the IRS cease any actions to assess, levy, or collect taxes. On or about April 2, 1997, Connell sent a letter to Shadduck stating that there was no automatic stay issue; he reasoned that because the bankruptcy was discharged in 1994, the IRA was a post-petition asset, and the three tax liabilities were post-petition, there could be no violation of an automatic stay.[5]

On April 14, 1997, Shadduck filed a motion with the Bankruptcy Court to hold the IRS in civil contempt for violating the automatic stay. *See* Docket Entry No. 224. On July 29, 1997, the IRS filed a motion "to lift the stay nunc pro tunc to sanction the Internal Revenue Service's assessment of the debtor's 1992 federal income tax liability, filing of a notice of federal tax lien, and levying on the debtor's IRA." *See* Docket Entry No. 237.

The Bankruptcy Court denied Shadduck's motion for contempt at the hearing on Au-

---

3. This proof of claim was filed on May 11, 1994 for federal income taxes due for 1991 and 1992. The total estimated liability was $3412.00 or $1706.00 per year. This claim was an unsecured priority claim pursuant to 11 U.S.C. § 507(a)(7) (Paragraph [7] was renumbered paragraph [8] by Pub.L. 103–394, § 304(c)(3), effective October 22, 1994).

4. The federal tax lien concerned Shadduck's federal income tax liability for 1992. The unpaid balance of assessment was listed as $58,343.78.

5. This statement is an articulation of the principle that the automatic stay does not apply to the collection of post-petition claims out of property of the debtor that is not property of the estate.

gust 4, 1997. He filed a timely notice of appeal on August 14, 1997. Civil Action No. 97–40182–WGY. Then, on August 25, 1997, the Bankruptcy Court entered an endorsement order granting the IRS retroactive relief from the automatic stay.[6] Shadduck filed a notice of appeal on September 8, 1997. This appeal is time barred, as it was not filed within the 10 day period for filing a notice of appeal. Fed.R.Bankr.P. 8002(a).[7] To have been timely, the notice of appeal should have been filed on or before September 4, 1997.

On September 16, 1997, the IRS filed a motion to modify the order granting relief from stay nunc pro tunc. In this motion, the IRS requested that "the Court lift the automatic stay *prospectively* to permit the Internal Revenue Service to re-assess the debtor Michael D. Shadduck's tax liability for the 1992 year and levy on the debtor's IRA." Motion to Modify Order Granting Relief from Stay Nunc Pro Tunc, Docket Entry No. 252, Sept. 18, 1997. The Bankruptcy Court granted this motion on October 2, 1997, with no opposition. Loc.R.Bankr.Ct. 27(D)(1). Shadduck filed a timely notice of appeal. All three cases were consolidated by order of this Court on November 12, 1997.

According to the IRS, it informed Shadduck, by a letter dated October 21, 1997, that it would not assess a 1992 federal income tax liability at that time. United States' Brief at 5. On October 23, 1997, the Bankruptcy Court denied Shadduck's discharge. *See* Docket Entry Oct. 23, 1997.[8]

The Bankruptcy Court found that the imposition of the lien was an act against property of the debtor since the IRA account was not property of the estate. Initially, as an ERISA-qualified pension, the property was excluded from the debtor's estate pursuant to the Supreme Court's holding in *Patterson*

---

**6.** Under the Local Rules of the Bankruptcy Court for the District of Massachusetts Rule 27(D)(1) "a motion for relief from stay may be allowed or denied by the Court, after the expiration of the ten day period for the filing of an opposition if no opposition is filed." There is no record on the docket of the filing of an opposition; therefore, the Bankruptcy Court appropriately entered its order without hearing on August 25, 1997.

**7.** Rule 8002 of the Federal Rules of Bankruptcy Procedure states, in relevant part, that:

*v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). When it was rolled over into an IRA account, it remained outside the debtor's bankruptcy estate as post-petition property of the debtor and was subject to creditor process.

Having determined the IRA to be property of the debtor, the Bankruptcy Court found that the IRS lien was made to secure the IRS's post-petition assessment. As this case was filed prior to the 1994 amendments to the Bankruptcy Code, the Bankruptcy Court concluded that this post-petition assessment was proscribed by the automatic stay. To be valid, retroactive relief from the automatic stay had to be granted. The Bankruptcy Court granted retroactive relief for two reasons. First, the assessment was done in good faith due to excusable neglect. Second, the modification of 11 U.S.C. § 362(b)(9) permitting governmental assessment of a debtor in bankruptcy establishes that it is reasonable and appropriate to permit the IRS to assess post-petition a pre-petition debt.

## DISCUSSION

### A. *Mootness of Shadduck's Appeal*

Federal courts have jurisdiction over a case or controversy presenting a live issue. For a case or controversy to be justiciable, "an actual controversy must exist at all stages of appellate ... review, and not simply at the date the action is initiated." *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 593, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984); *Thomas R.W. v. Massachusetts Dep't of Educ.*, 130 F.3d 477, 479 (1st Cir.1997). Where there is no actual controversy, a case is moot and a federal court lacks jurisdiction to decide the question(s) at issue.

> (a) *Ten–Day Period.* The notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from.

**8.** The Bankruptcy Court's findings of fact and conclusions of law were made orally at the conclusion of the hearing on Shadduck's motion. *See* Transcript Hearing on Motion by Debtor for Order Holding the Internal Revenue Service in Contempt. Docket Entry Aug. 4, 1997.

## 1. Granting of Relief from the Automatic Stay

■ Under 11 U.S.C. § 362(c)(2)(C) the automatic stay protection, which adheres upon the filing of a bankruptcy petition pursuant to 11 U.S.C. § 362(a), terminates at the time a discharge is denied.[9] In this case, a denial of a discharge was entered by the Bankruptcy Court on October 23, 1997. Accordingly, Shadduck can no longer obtain the protection of the automatic stay against the tax assessment and collection efforts of the IRS.

Even if the Bankruptcy Court improperly granted the IRS retroactive relief from the automatic stay, the issuance of an opinion on this point now would be advisory. The Constitution forbids the issuance of advisory opinions by federal courts. A conclusion of mootness is proper here as none of the exceptions to the mootness doctrine apply to this case [10] and the voiding of those actions made valid by the granting of retroactive relief would not require the IRS to begin anew its proceedings to assess and collect taxes from Shadduck.

Under 26 U.S.C. § 6213(a), the IRS cannot seek an assessment or a levy against a taxpayer until 90 days after the issuance of the notice of deficiency. This period is tolled by the filing of the bankruptcy petition. 26 U.S.C. §§ 6213(f) & 6503(h); *see also* 11 U.S.C. § 362(a). Upon the denial of discharge, the running of the 90 day waiting period continues. 26 U.S.C. § 6503. In this case, the 90–day waiting period ended, at the latest, on January 21, 1998. Regardless of this Court's decision on the correctness of the Bankruptcy Court's decision, it would not preclude the IRS from taking action to assess or levy based on the notice of deficiency and subject to the limitations on assessment and collection under the Internal Revenue Code.[11]

For the same reasons, Shadduck's appeal of the Bankruptcy Court's order granting prospective relief is also moot.

## 2. Motion for Contempt and Request for Sanctions: Damages Claim as a Basis for Justiciability

Where a plaintiff makes even a generalized claim for damages—regardless of its actual value—such claim is a sufficient basis upon which to maintain the justiciability of a case. *Ellis v. Railway Clerks*, 466 U.S. 435, 442, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984), *citing Powell v. McCormack*, 395 U.S. 486, 496–98, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).[12] "[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.; see also* 13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice & Pro-

---

**9.** Section 362(c) states:
 (c) Except as provided in subsections (d), (e), and (f) of this section—
  (1) the stay of any act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and
  (2) the stay of any other act under subsection (a) of this section continues until the earliest of—
   (A) the time the case is closed;
   (B) the time the case is dismissed; or
   (C) if the case is a case under chapter 7 of this title concerning an individual ... **the time a discharge is granted or denied.**
 (Emphasis added).

**10.** There are four exceptions to the mootness doctrine: 1) there are secondary or collateral injuries; 2) the issue is a wrong capable of repetition yet evading review; 3) the defendant voluntarily stops the allegedly illegal practice but is free to resume it at any time; and 4) the action is a properly certified class action suit. *See gener-*

*ally*, Erwin Chemerinsky, *Federal Jurisdiction* § 2.5, 125–42 (2nd ed.1994).

**11.** The statute of limitations on the assessment resumes running sixty days after the date of denial, and the statute of limitations on collection resumes running six months after the date of denial. 26 U.S.C. §§ 6501 & 6502.

**12.** In *Ellis*, clerical employees who were not formal members of the union paid an agency fee to the union equal to the union dues. These employees sought an injunction and damages regarding the use of such dues for purposes unrelated to the direct cost of collective bargaining on their behalf. During the appeal process, the union was decertified as the bargaining representative and no longer required or collected dues from the plaintiffs. Although the plaintiffs' claim for injunctive relief was moot, the Supreme Court concluded that the damage claim for interest on money illegally held was still justiciable.

cedure § 3533.3, at 261–66, n. 3 (2d ed.1984), and cases cited therein.

■ In his contempt motion, Shadduck sought damages pursuant to 11 U.S.C. §§ 105(a) and 362(h) [13] alleging that the IRS willfully violated the automatic stay. If this Court were to determine that the record before the Bankruptcy Court requires the conclusion that the conduct of the IRS in making the tax assessment, filing the federal tax lien, and issuing the levy was a willful violation of the automatic stay, then pursuant to either 11 U.S.C. § 105(a) or § 362(h) Shadduck is entitled to actual damages even though, at this time, the automatic stay has terminated and his claims for declaratory and injunctive relief are moot. [14]

■ Section 362(h) was added to the Bankruptcy Code in 1984. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353 § 304, 98 Stat. 333, 352. Prior to its enactment, sanctions for violations of the automatic stay were pursued in a civil contempt proceeding pursuant to the Bankruptcy Court's discretionary power under 11 U.S.C. § 105(a). The standard for a determination of contempt under section 105(a) required a showing of malicious intent or lack of good faith. "[A] party generally would not have sanctions imposed for its violation of an automatic stay as long as it had acted without maliciousness and had a good faith argument and belief that its action did not violate the stay." *Crysen/Montenay Energy Co. v. Esselen Assoc., Inc. (In re Crysen/Montenary Energy Co.)*, 902 F.2d 1098, 1104 (2nd Cir.1990).

**13.** Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Section 362(h) provides:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

■ This motion is therefore properly characterized as a motion for contempt pursuant to 11 U.S.C. § 105(a), and a motion for the imposition of sanctions pursuant to 11 U.S.C. § 362(h). Although the conduct of the IRS is not punishable as a civil contempt under 11 U.S.C. § 105(a), Congress has provided individual debtors with a damage remedy for the willful violation of the automatic stay. Moreover, the standard for determining a willful violation is not as stringent as the standard for determining contempt. *See* 3 Collier on Bankruptcy § 362.11[3] (15th ed.1998). This Court reviews the decision of the Bankruptcy Court and the conduct of the IRS under the willful violation standard of 11 U.S.C. § 362(h).

### B. *Violation of the Automatic Stay*

Section 362(a) of the Bankruptcy Code delineates the conduct prohibited by the automatic stay. In this case, three of these provisions are relevant:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of

\*　　\*　　\*　　\*　　\*　　\*

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

**14.** In his Motion for Contempt Order, Shadduck requests the following relief:

Wherefore, the Debtor requests the entry of an order, 1) declaring that the assessment against the Debtor tax for 1992 and lien issued by the IRS for the 1992 tax is null and void; 2) that the IRS shall forthwith mark the lien withdrawn in any office at which it was recorded; 3) that the IRS be enjoined from any further activity to assess or collect taxes from the Debtor in violation of the automatic stay or outside this bankruptcy proceeding; 4) that the IRS pay to the Debtor an amount determined by the Court after hearing as damages for its conduct (including an amount for punitive damages); and 5) for such other and further relief as is just.

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. . . .

■ The Bankruptcy Court concluded that 11 U.S.C. § 365(4) did not apply to this case as the IRA account on which the IRS levied was not property of the estate. This Court agrees. Pursuant to the Supreme Court's decision in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), a debtor's interest in an ERISA-qualified plan is excluded from the bankruptcy estate per 11 U.S.C. § 541(c)(2). At the time of the filing of Shadduck's bankruptcy petition, this property was an ERISA-qualified plan and, therefore, excluded. When it was rolled over into an IRA account, it became property of the debtor—as property acquired post-petition—but not property of the bankruptcy estate. As the Bankruptcy Court noted, the IRA account was subject to creditor process but–it is now necessary to point out—**only** to secure a post-petition claim.

■ Section 362(a)(5) specifically proscribes any act to create a lien against property of the debtor to secure a pre-petition claim. Shadduck's 1992 tax liability was a pre-petition claim. The filing of the tax lien, and the notice of the levy to the Bank were acts to create or perfect a lien against property of the debtor in violation of the automatic stay. *See* 11 U.S.C. § 362(a)(5). Moreover, the assessment of tax liability, the filing of the tax lien, and the notice of levy to the Bank were acts to collect, assess, or recover a pre-petition claim against the debtor. This Court disagrees with the Bankruptcy Court's

conclusion that the assessment of tax liability was impliedly excepted from the automatic stay due to Congress's amendment of the tax exceptions to the automatic stay under the Bankruptcy Reform Act of 1994.[15] Congress expressly stated in this act that such assessment is not excepted from the strictures of the automatic stay where a bankruptcy petition is filed before the effective date of the 1994 Amendments. Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 702(b), 108 Stat. 4106, 4150 (1994). The pre-amendment version of 11 U.S.C. § 362(b)(9) applies to this case, as Shadduck's bankruptcy petition was filed before the 1994 Amendments became effective on October 22, 1994. Thus, the IRS assessment of Shadduck's tax liability for 1992 was an act to assess a pre-petition claim in violation of the automatic stay per 11 U.S.C. § 362(a)(6).

### C. *Damages*

■ Whether Shadduck should receive damages for the violation of the automatic stay depends on whether the IRS conduct was willful and, if so, whether Shadduck suffered actual damages as a result. *See* 11 U.S.C. § 362(h). This Court reviews the Bankruptcy Court's factual finding that the IRS did not willfully violate the automatic stay under the clearly erroneous standard. *See In re Healthco Intern., Inc.*, 132 F.3d 104, 107 (1st Cir.1997); Fed.R.Bankr.P. 7052. The clearly erroneous standard permits this Court to set aside the Bankruptcy Court's factual determination only upon a "definite and firm conviction that a mistake has been committed." *U.S. Gypsum Co.*, 333 U.S. at

---

**15.** Section 116 of the Bankruptcy Reform Act of 1994 expanded the tax exceptions to the automatic stay. Specifically, section 362(b)(9) was amended to read:

(b) The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay—
(9) under subsection (a), of—
(A) an audit by a governmental unit to determine tax liability;
(B) the issuance to the debtor by a governmental unit of a notice of tax deficiency;
(C) a demand for tax returns; or
(D) the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property

of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor).

Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 116, 108 Stat. 4106, 4119 (1994).

Prior to the 1994 Amendments, Section 362(b)(9) read as follows:

(b) The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay—
(9) under subsection (a) of this section, of the issuance to the debtor by a governmental unit of a notice of tax deficiency.

395, 68 S.Ct. 525; *see also Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 152 (1st Cir.1990). This Court "cannot substitute its interpretation of the evidence for that of the [Bankruptcy Court] simply because [it] might give the facts another construction, resolve the ambiguities differently, and find a more sinister cast to actions which the [Bankruptcy Court] apparently deemed innocent." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 857–58, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982) (citation and internal quotation omitted). "If the [Bankruptcy Court's] account of the evidence is plausible in light of the record viewed in its entirety, [this Court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citations omitted).

### 1. Willful Conduct of IRS

The Second, Third, Fourth, and Ninth Circuits have adopted a standard for assessing whether or not a violation of the automatic stay is willful under 11 U.S.C. § 362(h).

> A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 227 (9th Cir.1989) (quoting *INSLAW, Inc. v. United States*, 83 B.R. 89, 165 [Bankr. D.D.C.1988]); *see also In re Bulldog Trucking, Inc.*, 68 F.3d 459, 1995 WL 613043 *3 (4th Cir. Oct. 19, 1995); *In re Atlantic Business & Community Corp.*, 901 F.2d 325, 329 (3rd Cir.1990); *Crysen/Montenay Energy Co. v. Esselen Assoc., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1105 (2nd Cir.1990) ("[A]ny deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages."); *Cash America Pawn, L.P. v. Murph*, 209 B.R. 419, 424 (E.D.Tex. 1997); *Taborski v. United States Internal Revenue Service*, 141 B.R. 959, 966 (N.D.Ill. 1992); *In re Washington*, 172 B.R. 415, 419 (Bankr.S.D.Ga.1994) (conduct is willful "when an individual engages in a deliberate act that is done in violation of the automatic stay with knowledge that the debtor has filed a petition in bankruptcy"), *aff'd in part, vacated in part on other grounds, United States v. Washington (In re Washington)*, 184 B.R. 172 (S.D.Ga.1995); *In re Craine*, 206 B.R. 594, 596–97 (Bankr.M.D.Fla.1997); *In re Clarkson*, 168 B.R. 93, 94–95 (Bankr.D.S.C. 1994); *Smith v. GTE North Inc. (In re Smith)*, 170 B.R. 111, 115 (Bankr.N.D.Ohio 1994); *In re Suarez*, 149 B.R. 193, 196 (Bankr.D.N.M.1992) (adopting the *Bloom* standard in determining that spouse's attempt to garnish wages is a willful violation of the automatic stay); *In re Johnson*, 138 B.R. 352, 354 (Bankr.D.R.I.1992).

Although the First Circuit has not defined the term "willful violation" as it is used in 11 U.S.C. § 362(h), this Court holds that the *Bloom* standard adopted by other circuits is the proper standard. This approach for assessing willful violation ensures the integrity of the automatic stay, recognizing its centrality in the bankruptcy proceeding. The purpose of the automatic stay is "to give the debtor breathing room by 'stop[ping] all collection efforts, all harassment, and all foreclosure actions.'" *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975 (1st Cir.1997) (quoting H.R.Rep. No. 95–595 at 340 [1977], reprinted in 1978 U.S.C.C.A.N. 5963, 6296–97).

### a. Knowledge of the IRS

The central question is whether the IRS had knowledge of the automatic stay at the time that the assessment of tax liability, the filing of the notice of levy, and the levy occurred. The IRS avers that due to an inaccurate discharge notation, it was unaware that the bankruptcy was still pending and the automatic stay was still in effect. Thus, asserts the IRS, it lacked the requisite knowl-

edge for its violation of the automatic stay to be willful. The Bankruptcy Court agreed with this characterization and found that the IRS had mistakenly determined that the denial of discharge had entered on May 18, 1994.[16] In characterizing the IRS's error in determining the bankruptcy had been discharged on May 18, 1994, the Bankruptcy Court stated:

> We perhaps should have a system whereby if an order is later revoked, then there should be some asterisk at least on the docket sheet to indicate that to those who are **perusing** the docket.

Trans. Hr'g Mot. Contempt at 24, ln. 13 (emphasis added). The Bankruptcy Court concluded that the conduct of the IRS was "excusable neglect" and therefore not willful. *Id.*[17] This Court must defer to this finding of fact unless it is clearly erroneous. A factual finding is clearly erroneous if the record lacks substantial evidence to support it. Documentary evidence in the record demonstrates the following:

First, in this case, the IRS looked only at the cover sheet of the computer docket as displayed on the PACER computer screen. It did not review the entry in the docket or any of the prior or subsequent entries. In some respects, electronic access to legal materials has greatly enhanced the efficiency of research, but not without attendant costs and risks. Among those costs is a detectable loss in the ability to verify the authenticity, accuracy, and completeness of information once located. *See* Ethan Katsh, *Law in a Digital World: Computer Networks and Cyberspace,* 38 Vill.L.Rev. 403, 482–85 (1993); Virginia Wise, *Managing Information Inflation,* in Expert Views on Improving the Quality of Legal Research Education in the United States 125 (1992). Responsible public officials, however, cannot simply throw up their hands in the face of this development. Rath-

er, they must take the steps necessary to overcome the limitations of the medium. Happily for the IRS, those steps are not onerous in the case of electronic docketing. If the IRS had taken the minimal step of perusing the docket itself, to use the Bankruptcy Court's phrase, it would have identified the subsequent motion seeking to vacate the discharge as well as the order thereon vacating the discharge. These developments are located two and four chronological entries, respectively, from the May 18, 1994 order of discharge entry.

Second, before the IRS violated the stay, the trustee orally informed the IRS employee who was responsible for the Shadduck case file that the erroneous discharge had been vacated. This conversation was noted in the investigation history log for Shadduck's case file. If oral notice is sufficient to inform a creditor of a bankruptcy, *see In re Lile,* 103 B.R. 830, 836 (Bankr. S.D.Tex.1989), *aff'd* 161 B.R. 788 (S.D.Tex. 1993) (citing *Stucka v. United States (In re Stucka),* 77 B.R. 777, 781 [Bankr.C.D.Cal. 1987] ), then oral notice was also sufficient to inform the IRS that the bankruptcy was still pending and the automatic stay still operative. Knowledge of IRS agents is properly imputed to the IRS. *See, e.g., In re Allen,* 83 B.R. 678, 680–81 (Bankr.E.D.Mont.1988) (holding that the IRS violated the automatic stay where an IRS office was given notice of the bankruptcy prior to an IRS agent issuing a notice of levy; the fact that the notice of levy was issued by a computer because of an administrative error would not excuse the violation of the automatic stay); *In re Santa Rosa Truck Stop, Inc.,* 74 B.R. 641, 643 (Bankr.N.D.Fla.1987) (holding that the ignorance of a particular agent who acts in violation of the automatic stay is insufficient to shield the IRS from a finding of willful viola-

---

**16.** This discharge order is, of course, inconsistent with the Bankruptcy Court's order dated May 30, 1994 extending to December 31, 1994 the deadline for filing an objection to the debtor's discharge or the dischargeability of a debt. *See* Fed.R.Bankr.P. Rule 2002(f) (the clerk of the Bankruptcy Court shall give notice to all creditors of the time fixed for objecting to the debtor's discharge pursuant to 11 U.S.C. § 727 and the dischargeability of a debt pursuant to 11 U.S.C.

§ 523). The inconsistency between this order and the May 18, 1994 discharge order should have caused the IRS to review the docket for clarification.

**17.** Although the Bankruptcy Court never expressly entered a finding that the IRS was not willful, this finding is implicit in the Bankruptcy Court's denial of Shadduck's contempt motion.

tion where the IRS, through another agent, had knowledge of the bankruptcy).

Third, there are two telling entries in the investigative history log submitted by the IRS to the Bankruptcy Court which reveal IRS knowledge of the bankruptcy at the time of the proscribed action. The first entry is dated December 3, 1996, and references 1) a conversation between James Connell, the IRS Revenue Officer responsible for Shadduck's case, and Mark Foss, the attorney for the Trustee, and 2) Connell's subsequent conversations with Mike Dubicki, the IRS special procedures staffer.

The first entry establishes that on December 3, 1996, the IRS had full knowledge that Shadduck's bankruptcy was still ongoing. In fact, fearing an impending ruling by the Bankruptcy Court in this matter, the IRS was actively considering moving to lift the stay. *See supra* at 577.

The second entry, dated December 4, 1996, refers to a conversation between Connell and Dubicki. This entry states, in pertinent part:

TC [telephone call] from Mike Dubicki. TP was, in fact, discharged on 5/18/94. The stay is lifted. They will file a lien and issue a levy with actual notice....

The IRS has stated that Dubicki made this determination by reviewing *only* the cover (i.e., first) page of the computer docket sheet on Shadduck's bankruptcy. *See* Mem. Opp. Mot. Contempt at 3 n. 1; Trans. Hr'g Mot. Contempt at 22. When Dubicki looked at the cover sheet of the computer docket on Shadduck's bankruptcy and saw the May 18, 1994 discharge notation, knowledge of apparently inconsistent facts should have caused him to review the entire docket. If Dubicki had taken this reasonable and prudent step, he would easily have determined that the bankruptcy discharge had been vacated. In fact, the bankruptcy docket was, in this case, correct in every respect. The IRS simply neglected to review it sufficiently.

In this case, the Court charges the IRS with the knowledge of its agents. The IRS had knowledge of the bankruptcy at the time of the proscribed action because an IRS employee was given notice of the order vacating the discharge and recorded this fact in the investigation history log that is a part of Shadduck's IRS file. Also, an IRS employee spoke with the Trustee's attorney about the status of the ongoing bankruptcy immediately prior to the disputed actions taking place. Accordingly, after a careful and considered review of the entire record, this Court concludes that the finding that the IRS conduct was not willful is clearly erroneous. The evidence in the record establishes the IRS's knowledge of the bankruptcy petition and its ongoing status at the time that the conduct violating the automatic stay occurred, and does not admit of the construction given it by the Bankruptcy Court.

### b. Deliberate Action of the IRS

The IRS asserts that it is the bureaucratic structure of the agency and not deliberate action that is the cause of the violation. Courts have wisely rejected this defense. *See, e.g., In re Boldman,* 157 B.R. 412, 416 (C.D.Ill.1993) (issuance of a notice of levy against a debtor in bankruptcy based on a second EIN number was a violation of the automatic stay even though the IRS did not know the number belonged to the debtor and the debtor's attorney was unaware of this number when the IRS inquired about it, because the IRS had notice of the bankruptcy filing, the automatic stay was operative, and the IRS could have found the EIN number had it exercised reasonable prudence); *In re Bulson,* 117 B.R. 537, 539 (9th Cir.BAP 1990) ("The fact that the IRS might have been mistaken about the status of the case, or believed it had a right to execute on the debtor's property does not make the act of collection non-willful."); *In re Solis,* 137 B.R. 121, 133 (Bankr.S.D.N.Y.1992) ("We won't allow the IRS to make less of an effort to comply with the automatic stay provisions of the Code and the orders of this Court than it makes to collect from a debtor."). "The IRS with its experienced legal staff and vast investigatory powers, could have found [the vacate order] had it 'exercised reasonable prudence.'" *In re Boldman,* 157 B.R. at 416 (citing *In re Solis,* 137 B.R. at 133). For the IRS to attempt to hide behind an administrative procedure that is questionable and highly susceptible to error, i.e., the review of only the cover page of the computer docket sheet

in determining the discharge status of a bankruptcy case, is neither reasonably prudent nor sufficient to avoid a determination of "willfulness" under 11 U.S.C. § 362(h). The IRS did not "rely on the bankruptcy court's own records" as averred by IRS counsel in her memorandum, see Mem. Supp. U.S. Mot. Affirm Bankr .Ct. Denial at 6, for had such action been taken, the IRS would have discovered the vacate order.

The Bankruptcy Court's characterization of the IRS's conduct as excusable neglect or inadvertent error is simply too deferential to an agency sufficiently equipped accurately to determine when an order of discharge entered.[18] Government agencies should be required to exercise the power conferred upon them by Congress with due regard for the rights of those individuals affected by their exercise of such power. The burdens created by deficiencies in IRS administrative handling of cases involving a taxpayer in bankruptcy should be borne by the IRS, not the taxpayer. *See In re Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1556 (11th Cir.1996).

A careful review of the IRS's own investigative history establishes that the filing of the tax-lien notice and the levy were deliberate actions taken by the IRS to secure Shadduck's 1992 tax liability. Because the record demonstrates that the IRS had knowledge of the bankruptcy and that the assessment, the filing of the lien, and the notice of levy were intentional acts, this Court rules that there has been a willful violation of the automatic stay.

### 2. Requirement of Actual Damages

■■■■ Where there has been a willful violation of the automatic stay, the debtor is entitled to "recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). However, where the only damages to the debtor are the attorneys' fees related to bringing a contempt motion, courts have ruled that such damages are insufficient to satisfy the damages element of 11 U.S.C. § 362(h) unless the debtor attempts to resolve the dispute with the IRS prior to filing a motion for contempt and sanctions. *See, e.g., In re Craine*, 206 B.R. at 598; *In re Brock Utilities & Grading, Inc.*, 185 B.R. 719 (Bankr.E.D.N.C.1995).

Here, the record indicates that Shadduck made at least two unsuccessful attempts to have the levy lifted and the lien filing withdrawn prior to filing his motion for contempt.[19] On or about December 26, 1996, he sent a letter to the IRS informing them that the bankruptcy was still pending and the automatic stay was operative. On or about April 1, 1997, he spoke with Connell and informed him of the same. Connell responded that the bankruptcy had been discharged and, therefore, the automatic stay was not an issue. As Shadduck did attempt to mitigate the attorneys' fees and costs related to this litigation, such damages are sufficient to satisfy the damage element of 11 U.S.C. § 362(h).

■■■ At the oral hearing on this matter, Shadduck stated that he had spent five thousand dollars in attorney's fees. Although Shadduck pursued this district court appeal pro-se, he was represented by counsel at the Bankruptcy Court proceeding for the purpose of arguing the motion.[20] Trans. Hr'g Mot. Contempt at 3. Shadduck also claims costs regarding expenses for a word processor.[21] Since the appellate record here is

---

**18.** Indeed, the Chief Judge of the Bankruptcy Court has provided PACER access to the Internal Revenue Service at no charge, although private users must pay for this service.

**19.** At the Bankruptcy Court proceeding, Shadduck's counsel refers to several letters between Shadduck and the IRS demonstrating efforts to resolve this issue. Trans. Hr'g Mot. Contempt at 11–12. Such documents were not made part of the appellate record. Nevertheless, the reference in the transcript is further evidence of Shadduck's attempts to resolve his dispute with the IRS.

**20.** His counsel was Steven Kressler, Esquire, Kressler & Kressler, 5 Pleasant Street, Worcester, MA 01609.

**21.** In addition to costs and attorneys' fees, Shadduck avers, for the first time in his reply brief, that the IRS's application of his 1993 tax refund to his outstanding tax liability constituted actual damages for violation of the automatic stay. Since this conduct was not a basis for Shadduck's motion for contempt, it ought not be considered in assessing damages.

insufficient for this Court to assess Shadduck's reasonable costs and attorneys' fees incurred in bringing his contempt motion—the denial of which was appealed in Civil Action No. 97–40182–WGY—it is remanded to the Bankruptcy Court to make such determination. Civil Action No. 97–40199–WGY is dismissed as untimely. The judgment of the Bankruptcy Court from which appeal was taken in Civil Action No. 97–40200–WGY is dismissed as moot. The parties shall bear their own costs on each of the three appeals.

Automation, it turns out, is only as good as the person who uses it. You knew that.